1  RONALD K. ALBERTS (SBN 100017)
   TAD A. DEVLIN (SBN 190355)
2  GORDON & REES LLP
3  275 Battery Street, Suite 2000
   San Francisco, CA  94111
4  Telephone: (415) 986-5900
   Facsimile:  (415) 986-8054
5
   Attorneys for Defendants
6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  DAWN RUTHERFORD,                    )  Case No. CV 07-6426 (WHA)
                                        )
12                 Plaintiff,           )  DEFENDANTS' THE PRUDENTIAL
                                        )  INSURANCE COMPANY OF AMERICA
13         v.                           )  AND SCENE 7 INC. LONG TERM
                                        )  DISABILITY PLAN'S MEMORANDUM OF
14  SCENE 7, INC. LONG TERM             )  POINTS AND AUTHORITIES IN SUPPORT
    DISABILITY PLAN, PRUDENTIAL         )  OF MOTION FOR SUMMARY JUDGMENT
15  INSURANCE COMPANY OF AMERICA, )
                                        )  Date:     July 10, 2008
16                 Defendants.          )  Time:     8:00 a.m.
                                        )  Dept:     9
17                                      )
                                        )  [Filed and served concurrently with Notice of
18                                      )  Motion and Motion, Declarations of Tamika S.
                                        )  Williams, Edith Ewing, and Ronald K. Alberts;
19                                      )  Notice of Filing and Manual Filing of
                                        )  Administrative Record; [Proposed] Order; and,
20                                      )  [Proposed] Judgment]
                                        )
21  _____)

22         TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: Defendants

23  PRUDENTIAL INSURANCE COMPANY OF AMERICA AND SCENE 7, INC. LONG

24  TERM DISABILITY PLAN ("Defendants"), hereby submit their Memorandum of Points and

25  Authorities in Support of their Motion for Summary Judgment.

26  / / /

27  / / /

28  / / /

1

2

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.    INTRODUCTION ....................................................................................................... 1

II.   UNDISPUTED MATERIAL FACTS ........................................................................ 2

    A.    Plaintiff's Disability Claim.................................................................................. 2

    B.    Plaintiff's Medical and Psychological Care and Prudential's
        Initial Claim Review ........................................................................................... 3

    C.    Plaintiff's First Appeal ....................................................................................... 8

    D.    Plaintiff's Second Appeal.................................................................................... 9

    E.    Plaintiff Seeks Third Appeal ............................................................................ 11

III.  LEGAL ARGUMENT.............................................................................................. 12

    A.    Summary Judgment Standard ............................................................................ 12

    B.    The *De Novo* Standard of Review ..................................................................... 12

    C.    Determination Based Solely on the Administrative Record ............................... 13

    D.    There Are No Clear Circumstances Requiring Augmentation of
        the Administrative Record ................................................................................. 14

    E.    Summary Judgment Should be Granted Because Plaintiff Was
        Paid Benefits for All Covered Illnesses Under the Plan ..................................... 15

IV.   CONCLUSION.......................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).................................... 13

*Chellino v. Kaiser Found. Health Plan, Inc.*, No. C 07-03019 CRB, 2008 U.S. Dist. LEXIS 23902 (N. D. Cal. March 26, 2008) at *25 (citing: Hawkins v. First Union Corp. Long-Term Disability Plan, 326 F.3d 914, 916 (7th Cir. 2003) ................................................................. 18

*Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990) ........................................... 16

*Firestone Tire & Rubber Co. v. Brush*, 489 U.S. 101, 115 (1989)............................................... 13

*Glover v. SBC Communs. Inc.*, No. C 07-02652 CRB, 2008 U.S. Dist. LEXIS 15608 (N.D. Cal. February 29, 2008) at *23-24 ................................................................................. 18

*James v. Equicor*, 791 F. Supp. 804 (N.D. Cal. 1992) ................................................................ 14

*Jordan v. Northrop Grumman*, 370 F. 3d 869 (9th Cir. 2003) ...................................................... 17

*Kearney v Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999)....................................................... 14

*Matsushita Electronic Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-586 (1986).............................................................................................................................. 12

*Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943-44 (9th Cir. 1995) ......................................................................................................................... 13, 14

*Para v. Cigna Group Ins.* 258 F. Supp. 2d 1058 (N.D. Cal. 2003) ............................................. 15

*Taft v. Equitable Life Assurance Society*, 9 F.3d 1469, 1472 (9th Cir. 1993) .............................. 13

*Tremain v. Bell Industries*, 196 F. 3d 970, 978 (9th Cir. 1999)................................................... 15

*Para v. Cigna Group Ins.* 258 F. Supp. 2d 1058 (N.D. Cal. 2003) ............................................. 15

## Statutes

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC §1001....................... 13

Federal Rules of Civil Procedure 56(b) .................................................................................... 12, 15

Federal Rules of Civil Proceudre 56(c) ........................................................................................ 12

Fed. R. Civ. Proc. 56(e) ................................................................................................................ 12

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    <u>INTRODUCTION</u>**

3    Plaintiff, Dawn Rutherford ("Plaintiff") sued Defendants, Prudential Insurance Company

4    of America ("Prudential") and Scene 7, Inc. Long Term Disability Plan ("The Plan") for long

5    term disability ("LTD") benefits under the Employee Retirement Income Security Act

6    ("ERISA"). Prudential is the claims administrator for The Plan, an employee welfare benefit

7    plan provided by Scene 7, Inc.

8    Prudential stipulates that its determination of plaintiff's right to LTD benefits is subject to

9    a *de novo* review.

10    Plaintiff was employed by Scene 7, Inc. and was covered under the terms of the Plan.

11    Plaintiff's Short Term Disability ("STD") benefits were paid September 6, 2001 through

12    November 17, 2001. The STD benefits were paid through the maximum duration, because no

13    exclusion applied. LTD benefits were disapproved when Plaintiff's STD ended pending the

14    results of the pre-existing exclusion investigation and medical evaluation of Plaintiff's claim.

15    LTD benefits were later approved for Plaintiff's mental condition only on May 22, 2002, with

16    the effective date of November 17, 2001.

17    After thoroughly investigating her claim, Prudential discontinued plaintiff's LTD benefits

18    on November 12, 2003, following the expiration of the 24 month limit for disability caused in

19    whole or in part by a mental condition or disability primarily based on self-reported symptoms.

20    Plaintiff thrice appealed Prudential's decision, and Prudential upheld its decision terminating her

21    benefits.    Plaintiff claims her symptoms of chronic back pain, pain in her extremities, an

22    inability to walk as well as her depression and fatigue preclude her from performing any

23    occupation.

24    Prudential's decision to terminate Plaintiff's LTD benefits is strongly supported by the

25    evidence contained in the administrative record. Prudential reviewed all records provided by

26    Plaintiff in support of her claims. Prudential had outside, board-certified physicians review

27    Plaintiff's records. Plaintiff's independent medical exam ("IME") was conducted. Plaintiff's

28    medical record file was reviewed on appeal. The medical records, including those of Plaintiff's

Page 1

1   own treating physicians, lacked verification of Plaintiff's self-reported symptoms.

2       Prudential's decision to terminate Plaintiff's LTD benefits was based on the totality of

3   her records and Prudential's investigation.  Prudential's denial was proper under the terms of The

4   Plan.  The administrative record supports a finding that (1) based on *de novo* review, the record

5   should not be augmented because further discovery is unnecessary; and (2) Prudential's decision

6   terminating plaintiff's LTD benefits was proper under The Plan because, as demonstrated by the

7   extensive records, Plaintiff's claimed disabilities are either primarily self reported or due to

8   mental illness. Prudential fulfilled its obligations to Plaintiff by paying her the maximum amount

9   of benefits allowed under the plan, twenty four months.

10

11  ## II.    UNDISPUTED MATERIAL FACTS

12          ### A.    Plaintiff's Disability Claim

13      Plaintiff is a 46-year old woman who was hired by Scene 7 on July 16, 2001, just <u>one</u>

14  <u>month</u> before her disability.  Plaintiff's job was Software Product Producer, which did not

15  involve any lifting, carrying, pulling or pushing.  She would sit for the majority of the day (7

16  hours) and only stood or walked for a half hour per day.  (PRUR 00867)

17      Plaintiff was a participant in the employee benefit plan offered by Scene 7, Inc.[1]

18      The Plan states that one is disabled when Prudential determines that he/she is unable to

19  perform the material and substantial duties of his/her regular occupation due to sickness or

20  injury, and has 20% or more loss in indexed monthly earnings due to that sickness/injury.  The

21  plan also has a limited pay period of 24 months for disabilities due to sickness/injury that

22  Prudential determines are primarily due to self reported symptoms or are due in whole or in part

23  to a mental illness. Also, The Plan does not cover disability which begins within 12 months of

24  the date of coverage becomes effective under The Plan and is due to a pre-existing condition. (

25  PRUR 01148 – 01149)

26  / / /

27

---

[1] Scene 7 is also known as "Goodhome, Inc." and the Plan documents indicate Goodhome, Inc. as the Employer. The

28  group plan is entitled Goodhome, Inc. Long Term Disability Plan.

Points and Authorities in Support of                    Case No. CV 07-06426 (WHA)
Motion for Summary Judgment

1    Plaintiff received both STD and LTD benefits under the Plan.  Plaintiff's original claim

2  for disability, made on August 28, 2001, was based on "extreme fatigue, nausea, headaches,

3  lower back pain, muscle and joint pain." (PRUR 00865)

4    **B.**     **Plaintiff's Medical and Psychological Care and Prudential's Initial Claim**

5        **Review**

6    In August 2001, Plaintiff sought medical treatment with her family physician, Dr. James

7  Leoni, for exhaustion, nausea, forgetfulness, and hot flashes.  (PRUR 00829)   Dr. Leoni

8  provided the physician statement in support of Plaintiff's initial disability claim on August 26,

9  2001.  At the time, Dr. Leoni noted Plaintiff was "house bound mostly due to back pain [and]

10  fatigue."  (PRUR 00870)

11    Plaintiff began psychological treatment with Dr. Barbara Badham in August 2001 and

12  plaintiff was taking Xanax.  (PRUR 00820)  On September 14, 2001, Plaintiff  went to the

13  emergency room at Petaluma Valley Hospital due to a possible overdose from Xanax, Tylenol

14  with Codeine and alcohol.  It was determined that the overdose was accidental. (PRUR 00763 –

15  0764)

16    1.    Dr. Leoni

17    On September 14, 2001, Plaintiff wrote Dr. Leoni stating, "I am concerned my disability

18  period is due to expire on September 20, 2001." (PRUR 00815)  She complained her physical

19  symptoms became worse over the past month including extreme fatigue, inability to focus and

20  concentrate, chronic lower back pain shooting down her right leg, numbness in her right leg,

21  chronic pain in neck, nausea, stomach cramps, irritable bowels, loss of appetite, debilitating

22  tension  and migraine headaches, and occasional low grade fevers. She reported muscle aches

23  and pains in her legs, shoulders and arms.  She requested extension of her disability to the

24  "maximum time allowable."  (PRUR 00815)  On that same date, Dr. Leoni issued a letter

25  indicating Plaintiff continues to be disabled due to multiple problems – back pain, abdominal

26  pain, neck pain, depression and severe anxiety and  requesting Plaintiff's disability extend

27  through January 7, 2002.  (PRUR 00828)

28  / / /

Points and Authorities in Support of                    Case No. CV 07-06426 (WHA)
Motion for Summary Judgment

1           2.      Dr. Badham

2           On September 19, 2001, Plaintiff wrote to Dr. Badham requesting information supporting

3   her disability claim be sent to Prudential.  Plaintiff also indicated the dates of her visits with Dr.

4   Badham and reasons for her counseling visits including depression over being ill and unable to

5   work, anxiety related to her work issues, anxiety attacks and overwhelming fatigue. (PRUR

6   00808)

7           On September 20, 2001, Plaintiff wrote to Dr. Badham again, this time indicating she was

8   in "crisis mode" due to Dr. Badham's letter to Dr. Leoni outlining Plaintiff's therapy sessions

9   faxed to Prudential.  She emphasized her inability to return to work due to her physical and

10  emotional issues having been "laid off from six technology jobs in the past several years."

11  (PRUR 00807) She requested Dr. Badham support a three month disability period through

12  January 7, 2002. (PRUR 00807) On September 20, 2001, Dr. Badham issued a "to whom it may

13  concern" letter noting Plaintiff's ongoing psychotherapy and treatment for acute anxiety and

14  depression.(PRUR 00813)  Dr. Badham recommended Plaintiff's disability extend through

15  January 7, 2002.  (PRUR 00814)

16          3.      Dr. Michael Kurtz and Nurse Practitioner Grinnell

17          In October of 2001, Plaintiff  began treatment with Michael Kurtz, M.D. (orthopedic

18  surgeon).  At the time, she complained of neck pain, mid-low back pain, sciatic pain, numbness

19  in right leg, headaches, fatigue and pain in her left foot; Dr. Kurtz's diagnosis was cervical and

20  lumbosacral disc disease, fibromyalgia.  (PRUR 00794;  PRUR 00798)  Dr. Kurtz recommended

21  Plaintiff remain off work until December 3, 2001.  (PRUR 00822 – PRUR 00823)

22          On October 19, 2001, Plaintiff saw a nurse practitioner, Patricia Grinnell, N.P., to whom

23  Plaintiff gave a history of fibromyalgia, cervical and lumbar spine pain, and "sleep disorder".

24  (PRUR 00773)  She had numerous tender points in her neck and upper back.  Ms. Grinnell

25  diagnosed fibromyalgia, noting that Plaintiff's symptoms had symptoms for months starting in

26  May 2001. (PRUR 00774)

27          On November 1, 2001, Dr. Badham conducted Plaintiff's mental status examination.  Dr.

28  Badham noted Plaintiff's "obvious physical discomfort, visible fatigue, poor concentration,

Points and Authorities in Support of                    Case No. CV 07-06426 (WHA)
Motion for Summary Judgment

1    crying, panic attacks." (PRUR 00555- 00556)

2            4.    Dr. Jeffrey Mandel

3        Plaintiff also sought treatment with Dr. Jeffrey Mandel (a fibromyalgia treater)  In

4    November of 2001, Dr. Mandel provided a report on Plaintiff's condition, listing her pain

5    complaints and diagnosis of fibromyalgia and onset of chronic fatigue syndrome.  He

6    recommended medication, rest and continued medical care.  He stated that Plaintiff was

7    completely disabled, unable to work and recommended disability of six months to one year,

8    subject to review. (PRUR 00698 – 00699)

9        On November 13, 2001, Prudential wrote to Plaintiff, informing her that they were

10    continuing review of her LTD benefits under the plan and that they were in the process of

11    obtaining additional medical records from her treating physicians.  (PRUR 01122)  On

12    November 24, 2001, Plaintiff wrote to Prudential in response to Prudential's letter of November

13    13, 2001,  regarding further clinical data collection and disputed Prudential's continuing review.

14    (PRUR 00695 – 00696)

15            5.    Nurse Practitioner Grinnell

16        On November 27, 2001, Plaintiff wrote to Ms. Grinnell (a nurse practitioner who

17    rendered care to her), indicating a discrepancy in Ms. Grinnell's chart notes from her visit of

18    October 19, 2001.  Plaintiff wrote, "I did not report nor experience any illness whatsoever during

19    the month of May-June 2001.  In fact, I was completely healthy for the entire year having not

20    even visited a physician or taken a prescription medication until I became ill at the beginning of

21    August 2001."  (PRUR 00689)  Plaintiff wrote to Prudential on December 3, 2001, enclosing a

22    letter from Ms. Grinnell in which Ms. Grinnell indicates, "Ms. Rutherford did not report the

23    experience of any symptoms of fibromyalgia or other illnesses prior to August of 2001."  (PRUR

24    00670 – 00672)

25            6.    Medical Review by Dr. Gwen Brachman

26        On December 4, 2001, the medical records were reviewed by Dr. Gwen Brachman

27    (rheumatologist).  Dr. Brachman noted that there were numerous letters written by Plaintiff to

28    her providers all of which were written with sophisticated vocabulary and grammatical

Points and Authorities in Support of                    Case No. CV 07-06426 (WHA)
Motion for Summary Judgment

1    constructs illustrating Plaintiff's ability to process  information, formulate plans and express

2    herself in a cogent manner.  With respect to the disc bulge, Dr. Brachman noted there was no

3    evidence of disc bulge or herniation.  Regarding fibromyalgia, the documents showed no

4    evidence of decreased muscle strength or other muscle abnormality and no findings of an

5    inflammatory process, however, Plaintiff qualified for classification of fibromyalgia by finding

6    of diffuse tender points elicited on one exam.  Based on Dr. Brachman's review, the symptoms

7    of fibromyalgia began in  May, 2001.  With respect to Plaintiff's depression and anxiety, the

8    reported anxiety, fears and depression are about many things, the majority of which are related to

9    work and personal/family issues.  Regarding Chronic Fatigue Syndrome ("CFS"), the diagnosis

10   is used to classify "disabling fatigue" without a discernible underlying cause.  Dr. Brachman's

11   evaluation was that to a reasonable degree of medical certainty, Plaintiff was not physically

12   impaired from performing essential functions of her own occupation.  (PRUR 00887 – 00888)

13                 7.  Further Medical Review by Nurse Josephine Malsyz

14        A further medical review was done on December 7, 2001 by nurse Josephine Malysz.

15   She found Plaintiff's medical documentation did not support a mental impairment that prevented

16   Plaintiff from performing the essential duties of her job.  There was no documentation to support

17   symptomatology preventing her from performing occupational duties.  (PRUR 00888 – 00889)

18                 8.     Prudential Discontinues LTD Benefits

19        Accordingly, on December 10, 2001, Prudential terminated Plaintiff's long term benefits

20   under the Plan based on Dr. Brachman's review, Plaintiff's pre-existing condition, and the

21   medical records showing no support for any physical condition preventing Plaintiff from

22   performing the material duties of her own occupation.  (PRUR 01113)  Plaintiff appealed the

23   decision. (PRUR 00648)

24                 9.     Plaintiff Submits Further Information on Appeal

25        On December 22, 2001, Plaintiff wrote to Prudential providing additional medical

26   information and the case history of her ongoing disability.  Plaintiff contended her job

27   description "uses many active verbs" and is not sedentary.  Plaintiff submitted the results of a

28   sleep study finding she had reduced sleep efficiency of 74% and an absence of Stage III and

1   Stage IV sleep.  She enclosed the results of her Epstein Barr Virus test, which suggested recent

2   or chronic-active infection.  (PRUR 00636)  Plaintiff's physicians wrote to Prudential also.  Dr.

3   Mandel detailed Plaintiff's initial examination.  Plaintiff had pain throughout her lower and

4   upper body.  (PRUR 00600)  She had numbness in her leg and pain in her hands and feet.   Dr.

5   Mandel noted Plaintiff's difficulty concentrating and memory problems and noted her episodes

6   of myofascial paresis, which prevented her from speaking properly and impeded her ability to

7   communicate effectively and intelligently.  (PRUR 00601) Dr. Mandel concluded "it would be

8   impossible for my patient to accomplish" any of the demands/tasks of her job.  (PRUR 00603)

9   On January 14, 2002, rheumatologist Peter H. Stein wrote to Prudential noting Plaintiff "suffers

10  very severe pain, fatigue and sleep disorder" and that "she is in the throws of a very severe

11  presentation of fibromyalgia."  He opined Plaintiff is not capable of working and he "feels

12  strongly" disability status should continue for at least the next six months."  (PRUR 00516)

13                    10.    Medical Review by Dr. Stephen Gerson

14          Prudential submitted the file for review by Stephen Gerson, M.D.  Dr. Gerson's April 26,

15  2002 report (PRUR 00475 – 00486) of his review indicated he evaluated Plaintiff's pre-existing

16  *psychiatric* condition prior to August of 2001, and opined on Plaintiff's current psychiatric

17  treatment.  Dr. Gerson found no evidence of a major psychiatric pre-existing condition prior to

18  August 2001.  *Dr. Gerson concluded Plaintiff met the criteria for a diagnosis of fibromyalgia*

19  *and chronic fatigue syndrome with concomitant severe depression.*  (PRUR 00485).

20                    11.    Prudential Reinstates Benefits on Mental Illness *Only*

21          Accordingly, on May 23, 2002, Prudential *reinstated* Plaintiff's long term disability

22  benefits.  Prudential noted Plaintiff's complaints of tender pain points, fatigue and heaviness to

23  the upper extremities were raised in August 2001, but Plaintiff had experienced these symptoms

24  three months prior.  Prudential found the prudent person pre-existing policy provision applied to

25  Plaintiff's claim based on symptoms of exhaustion, nausea, forgetfulness, flashes, generalized

26  tender points, heaviness to the upper extremities and difficulty sleeping.  Prudential's review of

27  Plaintiff's file revealed impairment based on depression.  Accordingly, Prudential approved

28  Plaintiff's LTD benefits based on her *psychiatric condition only*. (PRUR 01083 – 1086; 01085)

Points and Authorities in Support of          Case No. CV 07-06426 (WHA)
Motion for Summary Judgment

1      On April 3, 2003, Prudential wrote to Plaintiff advising that since Prudential determined

2   Plaintiff's disability was caused, in part, by mental, psychoneurotic or personality disorder, and

3   her benefits payment was limited to 24 months under the Plan unless she was confined in a

4   hospital at the end of the 24 months.  Prudential advised Plaintiff's 24 month period of disability

5   would end on November 11, 2003 and her claim would likely terminate on November 12, 2003.

6   (PRUR 01080 – 01081)  Prudential wrote to Plaintiff again on August 26, 2003, notifying her of

7   termination based upon the foregoing.  (PRUR 01074 – 01076)

8      **C.    Plaintiff's First Appeal**

9      Plaintiff appealed Prudential's LTD benefits determination on September 30, 2003,

10  contending her condition, fibromyalgia, is a physical illness that prevents her from working.

11  (PRUR 00430 -00431;PRUR 01069)

12     As part of its appeal review, Prudential  contacted Plaintiff's treating physician,

13  psychologist Dr. Lehman regarding what condition prevented Plaintiff from working.  Dr.

14  Lehman noted that he had not seen Plaintiff since September of 2003 and advised Prudential to

15  contact Dr. Leoni.  Dr. Leoni advised that he had not seen Plaintiff since November of 2001 and

16  had no further information to provide.  There was no medical evidence to support an impairment

17  (not subject to the benefit limitation or prudent pre-existing exclusion) that prevented Plaintiff

18  from performing a gainful occupation. (PRUR 00908 – 00909)  Prudential determined Plaintiff's

19  disability was based on self reported symptoms of pain and fatigue and psychiatric illness.

20  Plaintiff's primary diagnosis of fibromyalgia was excluded due to the prudent person standard

21  for treatment prior to the coverage period.  Plaintiff's chronic fatigue syndrome was also subject

22  to the pre-treatment exclusion.  (PRUR 00906 – 00907)      On July  27, 2004, Prudential upheld

23  its decision discontinuing Plaintiff's LTD benefits.  (PRUR 01060 – 01063) Prudential advised

24  Plaintiff's counsel, Richard Johnston, of its denial decision. Prudential set forth The Plan

25  limitation for self reported symptoms and mental illness, which is a combined 24 months.

26  (PRUR 01061)   Prudential concluded that the pre existing exclusion applied to her self reported

27  symptoms of fibromyalgia, chronic fatigue syndrome and her sleep disorder. (PRUR 01062)

28  / / /

Points and Authorities in Support of                    Case No. CV 07-06426 (WHA)
Motion for Summary Judgment

### D.    Plaintiff's Second Appeal

On July 28, 2005, Plaintiff again appealed Prudential's LTD benefits decision, challenging Prudential's determination that Plaintiff had self reported conditions and pre-existing conditions.  Plaintiff argued that her condition "has been confirmed over and over by independent practitioners, precisely by means of 'tests, procedures and clinical examinations standardly accepted in the practice of medicine' (quoting the language from the plan documents). (PRUR 00367 – 00368)  On January 24, 2006, Plaintiff provided Prudential her additional medical records for Plaintiff from April 2003 to January 2006.  (PRUR 00350)

#### 1.    Prudential Conducts Further Medical Review

On March 26, 2006, Dr. April D. Campbell reported on her review of Plaintiff's medical records.  (PRUR 00108 – 00217)  Dr. Campbell found "woefully lacking [records] and a well detailed physical exam" of Plaintiff.  She noted Plaintiff's physical examinations did not support use of a cane.  (PRUR 00212)  Dr. Campbell recommended Plaintiff see a physical medicine and rehabilitation physician for a detailed physical exam.  (PRUR 00213)  Dr. Campbell was unable to opine on Plaintiff's restrictions and limitations because the documentation was incomplete. (PRUR 00213)  Dr. Campbell found Plaintiff's fibromyalgia diagnosis was self reported because it is based entirely on her subjective complaints.  Dr. Campbell opined Plaintiff's fatigue complaints were likely related to her psychiatric issues.  (PRUR 00214)

#### 2.    Independent Medical Examination

On September 14, 2006, Dr. Alan Kimelman reported on Plaintiff's independent medical examination.  (PRUR 00148 – 00190)  Dr. Kimelman interviewed and examined Plaintiff on July 12, August 2 and August 23, 2006.  (PRUR 00148).  The examinations were frequently interrupted to allay Plaintiff's anxiety and discuss her prolonged history and multiple pain complaints.  Her gait fluctuated between a wide-based gait when holding onto her husband to a slow labored gait associated with heavy breathing.  (PRUR 00167)  Plaintiff exhibited tenderness to palpation on the thoracic spine and cervical and lumbar spine.  (PRUR 01168 – 01169; PRUR 01171)  She also had tenderness in her pelvic area. (PRUR 01173)

/ / /

| Points and Authorities in Support of Motion for Summary Judgment | Case No. CV 07-06426 (WHA) |

1        Dr. Kimelman noted Plaintiff's hand strength was inconsistent with her use of a cane

2    while walking or holding part of her body weight for stability.  Plaintiff's balance and grip

3    strength were better than she exhibited.  (PRUR 00181)

4        With respect to self-reported pain levels, Dr. Kimelman noted Plaintiff's various

5    behaviors of exhibiting pain behavior corroborated symptom magnification.  She was talking

6    loudly, using profanity, frequently interrupting the exam to complain of pain, and requesting her

7    husband assist with activities.  (PRUR 00185)  Dr. Kimelman opined that plaintiff magnified her

8    symptoms  (PRUR 00186)  Dr. Kimelman concluded that outside of Plaintiff's diagnosis of

9    degenerative joint disease, her conditions were more psychiatric than orthopedic, neurological or

10   musculoskeletal.  Although he noted that disc disease was supported by the mildly abnormal

11   cervical and lumbar magnetic resonance images, tenderness on exam and painful range of

12   motion, he pointed out, however, that the severity of the disability from this condition was not

13   supported.  (PRUR 00185)

14           3.   Prudential Upholds LTD Benefits Termination

15       On November 3, 2006, Prudential upheld its denial of Plaintiff's LTD benefits.  (PRUR

16   01015) In its denial letter Prudential outlined the key terms of the Plan regarding the definition of

17   disability, the limited pay periods for self reported symptoms and mental illness, and the pre-

18   exiting condition exclusion provisions. (PRUR 01016).  Prudential explained its review of

19   plaintiff's records.   Although a number of physicians opined Plaintiff was disabled, there were

20   no findings supporting their opinions because the physical examinations were incomplete.

21   (PRUR 01019)

22       Prudential noted that there were several records where Plaintiff prepared the record of her

23   various complaints and impairments and then had a physician sign the record.  The appropriate

24   physical exam and testing was not performed to make those determinations. (PRUR 01019)

25   Plaintiff's diagnosis of fibromyalgia was self-reported because it was based entirely on

26   Plaintiff's complaints of body tenderness.  Plaintiff's sleep study showed some alpha wave

27   intrusion and decrease in stage III and IV sleep.  Prudential noted these findings were not

28   specific to fibromyalgia and can actually be found in normal and in depressed individuals, and

Points and Authorities in Support of            Case No. CV 07-06426 (WHA)
Motion for Summary Judgment

1 | those who have experienced viral illnesses.

2 | E. **Plaintiff Seeks Third Appeal**

3 | On May 4, 2007, Plaintiff for the third time appealed Prudential's decision.  Plaintiff

4 | contended Prudential focused on conclusions of Dr. Kimelman based on his examination of

5 | Plaintiff, and not the weight of evidence in the file. Plaintiff focused her third appeal on Dr.

6 | Kimelman's conclusion that plaintiff magnified symptoms and exhibited Waddell signs

7 | (signifiers of symptom magnification. (PRUR 00064, 00066)

8 | 1.    Prudential Conducts Employability Analysis

9 | Prudential conducted transferable skills analysis using a software program considering

10 | plaintiff's skills demonstrated in her prior occupations and her current restrictions.  The positions

11 | with which Plaintiff had direct experience - project director, hardware analyst and systems

12 | analyst -  were all sedentary occupations primarily performed seated and involving occasional to

13 | frequent reaching and handling and frequent keyboard use.  Plaintiff's skills were highly

14 | transferable to department manager position.  (PRUR 00933)

15 | 2.    Prudential Upholds Its Decision on Third Appeal Terminating

16 | Plaintiff's LTD Benefits

17 | On July 20, 2007, Prudential notified Plaintiff of its decision terminating her LTD

18 | benefits.  Prudential  responded to Plaintiff's assertions that there was no symptom magnification

19 | during Plaintiff's IME.  The IME showed Plaintiff could sit for up to one hour at a time for six

20 | out of eight hours, that she could stand for one half hour at a time for four out of eight hours in a

21 | day.  She also could walk up to one half hour at a time for four out of eight hours in a day.  She

22 | could lift, carry, and pull ten pounds occasionally.  She had a normal range of motion, normal

23 | neurological findings, no contractures, and no muscle atrophy.  There was no basis for plaintiff's

24 | hand disability in that physical examination and diagnostic findings did not support any

25 | restrictions from repetitive finger or hand activities.   Further, the Transferable Skills Analysis

26 | and Labor Market Survey showed plaintiff had transferable skills to perform other sedentary

27 | occupations including systems analyst, hardware analyst, department manager, and systems

28 | project manager. (PRUR 01003)

Points and Authorities in Support of                    Case No. CV 07-06426 (WHA)
Motion for Summary Judgment

1      Prudential reiterated the twenty four month limitation regarding Plaintiff's self-reported

2    symptoms, noting Plaintiff had already received twenty four months of benefits and therefore no

3    further benefits were payable.  There was no medical evidence of a condition not subject to these

4    limitations.  Therefore, Prudential upheld its decision to terminate Plaintiff's claim effective

5    November 11, 2003. (PRUR 01003)

6

7    **III.    LEGAL ARGUMENT**

8           **A.    Summary Judgment Standard**

9      A party against whom relief is sought may move at any time, with or without supporting

10   affidavits, for summary judgment on all or part of the claim.  Fed. R. Civ. Proc. 56(b).  The

11   judgment sought should be rendered if the pleadings, the discovery and disclosure materials on

12   file, and any affidavits show that there is no genuine issue as to any material fact that the movant

13   is entitled to judgment as  a matter of law.  Fed. R. Civ Proc. 56(c).

14      "One of the principal purposes of the summary judgment rule is to isolate and dispose of

15   factually unsupported claims or defenses..." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-324

16   (1986).  Prudential is entitled to judgment as a matter of law because plaintiff has failed to make

17   a sufficient showing on an essential element of her case with respect to which she has the burden

18   of proof.  *Id.*  The only way the opposing party can defeat a motion for summary judgment is by

19   laying out specific facts establishing a genuine issue of material fact.  *Matsushita Electronic*

20   *Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-586 (1986); Fed. R. Civ. Proc.

21   56(e), emphasis added.

22           **B.    The *De Novo* Standard of Review**

23      Before the trier of fact may resolve an ERISA dispute, the proper "standard of review"

24   must be selected.  The Supreme Court has held that the *de novo* standard of review is appropriate

25   in an ERISA case "unless the benefit plan gives the administrator or fiduciary has discretionary

26   authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*

27   *Tire & Rubber Co. v. Brush*, 489 U.S. 101, 115 (1989).  Where the *de novo* standard is applied,

28   the District Court simply evaluates whether the benefits were correctly or incorrectly denied

Page 12

1 pursuant to the terms of the plan. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th
2 Cir. 2006).

3      Plaintiff seeks reinstatement of her benefits under Goodhome Inc's Long Term Disability
4 Plan, an employee benefit welfare plan, administered by Prudential. The matter therefore arises
5 under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC §1001 et seq.
6 When determining whether to uphold Prudential's decision to discontinue Plaintiff's disability
7 claim under ERISA, the Court must review it under either the "*de novo*" standard or under the
8 "abuse of discretion" (also called the "arbitrary and capricious") standard.

9      In this case, Prudential stipulates that the Court's review will be *de novo*.

10      **C.**    **Determination Based Solely on the Administrative Record**

11      ERISA limits the evidence evaluated when considering whether benefits are due.
12 Specifically, whether benefits were properly denied must be determined exclusively by a review
13 of the information within the "administrative record." *Taft v. Equitable Life Assurance Society*,
14 9 F.3d 1469, 1472 (9th Cir. 1993). This restriction is based on the principle that federal district
15 courts should not function "as substitute plan administrators," and that expanding the record on
16 appeal "would frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA
17 scheme." *Id*.

18      Where the *de novo* standard of review is applied, the District Court has limited discretion
19 to permit the introduction of some extrinsic evidence. *Mongeluzo v. Baxter Travenol Long Term
20 Disability Benefit Plan,* 46 F.3d 938, 943-44 (9th Cir. 1995). However, "in most cases" extrinsic
21 evidence should not be admitted and should be allowed "only when circumstances clearly
22 establish that additional evidence is necessary to conduct an adequate *de novo* review." *Id*.

23      Here, Prudential stipulates to a *de novo* standard of review. The Court should restrict its
24 review to the administrative record, filed concurrently herewith. As set forth in the
25 accompanying declaration of Tamika S. Williams, the guidelines for preparing the administrative
26 record dictate that all documents relating to the claim become part of the record and there are no
27 documents relating to the claim which are not considered a part of the record and included
28 therein. (*Declaration of Tamika S. Williams, ¶ 3*) Furthermore, as more fully set forth in

Points and Authorities in Support of                   Case No. CV 07-06426 (WHA)
Motion for Summary Judgment

1    Williams Declaration, the administrative record includes all documents, including computer

2    generated entries, created or received from every source regarding the claim, claim forms;

3    medical Records pertaining to Plaintiff's claim; correspondences including those between the

4    claimant and Prudential, external communications pertaining to the claim; and internal

5    communications of Prudential including notes as well as telephone logs, from the claim inception

6    through final appeal and denial.  (*Declaration of Tamika S. Willams,* ¶ 5) Also see the

7    Declaration of Edith Ewing regarding the Group Policy which is considered a part of the

8    Administrative Record.

9            **D.      There are No Clear Circumstances Requiring Augmentation of**

10                     **the Administrative Record**

11           Where there was a sufficiently developed record before the plan administrator, the court

12   should not review documents not submitted to the plan administrator prior to its decision.

13   *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan,* 46 F.3d at 943 (citing *James*

14   *v. Equicor,* 791 F. Supp. 804 (N.D. Cal. 1992)).  Furthermore, the court should not take

15   additional evidence merely because someone at a later time comes up with new evidence that

16   was not presented to the plan administrator.  *Id.* at 944.

17           Here, the administrative record contained every document relating to Plaintiff's claim,

18   including every single internal and external communication, and a multitude of medical records,

19   reports and findings, including an Independent Medical Exam report, as well as every single

20   communication with Plaintiff herself including additional information Plaintiff provided to

21   Prudential. (*See Declarations of Tamika S. Williams* and *Edith Ewing*; *see* also Administrative

22   Record,  PRUR00001 – PRUR01188.

23           In *Kearney v Standard Ins. Co., 175 F.3d 1084* (9th Cir. 1999), the Appellate Court held

24   that the review was properly limited to the evidence that was before the administrator because

25   (1) Mr. Kearney could as easily have submitted the proposed additional material to Standard, and

26   (2) the court did not need it to conduct an adequate de novo review.  *Id.* at 1091.   Here, there are

27   no circumstances whatsoever that would require additional discovery or augmentation of the

28   administrative record.  The administrative record includes extensive documents in this matter

Points and Authorities in Support of                          Case No. CV 07-06426 (WHA)
Motion for Summary Judgment

1   illustrating Prudential's full and fair review of all the issues. Further, Plaintiff had the

2   opportunity to -- and did-- continuously supplement and update her records throughout the claim

3   as well as during her three appeals.  The information submitted and Prudential's review are

4   detailed extensively in the administrative record.  Thus, there can be no argument by Plaintiff

5   that further information or discovery is required and any such request should be summarily

6   denied as "evidence that could as easily have been submitted to the administrator" are disfavored

7   under *Mongeluzo*.  *See Kearney, supra175 F.3d at 1091.*

8       E.      **Summary Judgment Should be Granted Because Plaintiff Was Paid Benefits**

9               **for All Covered Illnesses Under The Plan**

10          Application of the *de novo* standard requires the district court to determine the presence

11   of material facts in dispute, just as it does in other motions for summary judgment. Under a *de*

12   *novo* standard of review, the district court must review *de novo* the plan administrator's

13   decision to deny benefits.  In conducting that review, the Court may decide the case by summary

14   judgment if there are no genuine issues of material fact in dispute.  *Tremain v. Bell Industries,*

15   *196 F. 3d 970, 978 (9th Cir. 1999); Para v. Cigna Group Ins.* 258 F. Supp. 2d 1058 (N.D. Cal.

16   2003).  As shown by the administrative record, there is no competent evidence that Plaintiff can

17   rely on to establish a triable issue of fact that her LTD benefits should be reinstated.

18          Here, judgment should be entered in Prudential's favor based upon the self reported

19   symptoms and mental illness limitations in The Plan.  The Plan states:

20              "Disabilities due to a sickness or injury which, as determined        by Prudential,
21              are primarily based on self-reported symptoms have limited pay period during
                your lifetime.  Disabilities which, as determined by Prudential, are due in whole
22              or in part to mental illness also have a limited pay period during your lifetime.
                The limited pay period for self-reported symptoms and mental illness combined is
23              24 months during your lifetime." (PRUR 01147) (Emphasis added)

24   The Plan also provides,

25              "*Self-reported symptoms* means the manifestations of your condition, which you
26              tell your doctor, that are not verifiable using tests, procedures and clinical
                examinations standardly accepted in the practice of medicine.  Examples of self-
27              reported symptoms include but are not limited to headache, pain, fatigue,
                stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy."
28

Points and Authorities in Support of                    Case No. CV 07-06426 (WHA)
Motion for Summary Judgment

1

> "*Mental illness* means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive or bipolar illness, anxiety, somatization, substance related disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine. (PRUR 01148)

When applying a *de novo* review to a claim for benefits, the Court "may construe the Plan in accordance with the rules normally applied to insurance policies." The Ninth Circuit "interpret[s] terms in ERISA insurance policies 'in an ordinary and popular sense as would a [person] of ordinary intelligence and experience". *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990)

The terms of The Plan are clear and unambiguous. The Plan sets forth in detail the limitations that apply and the circumstances under which either of the limitation periods would come into play. Under the ordinary terms of The Plan, any condition primarily based on mental illness or self reported symptoms has a limited pay period of twenty four months. Here, the administrative record proves that such a limitation applies because Plaintiff's disability only arises out of either her self reported symptoms of fatigue, pain or tenderness, or her mental illness. (PRUR 01060 – 01063)

1.    Plaintiff's Mental Illness is Subject to the 24 Month Limitation

It is undisputed that since August 2001, Plaintiff was under the care of psychologist, Dr. Barbara Badham, for depression and anxiety. (PRUR 00820; PRUR 00726) In 2002, plaintiff underwent treatment with psychiatrist Dr. Nancy A. Trahms, for the same conditions. (PRUR 00514) Prudential determined that Plaintiff was disabled due solely to her psychiatric condition. Prudential made this decision based on its reviews of the medical records and independent psychiatric medical reviews. (PRUR 01085) On April 3, 2003, Prudential wrote to Plaintiff advising Prudential determined Plaintiff's disability was caused, in part, by mental, psychoneurotic or personality disorder, and, under the plan, Plaintiff's benefits payment were limited to 24 months unless she was confined in a hospital at the end of 24 months. Prudential advised Plaintiff's that her 24 month disability period ended on November 11, 2003 and her

Points and Authorities in Support of     Case No. CV 07-06426 (WHA)
Motion for Summary Judgment

1   claim would likely terminate on November 12, 2003. (PRUR 01080 – 01081)  On August 26,

2   2003, Prudential re-notified Plaintiff of the pending termination of benefits under the limitation

3   period. (PRUR 01074 – 01076)  Plaintiff has a mental illness and Prudential paid her benefits for

4   the 24 month period. Under the terms of The Plan and based on the administrative record,

5   Prudential has no further obligation to pay benefits to Plaintiff.  Summary judgment should be

6   granted in favor of Prudential.

7

8        2.    Plaintiff's Fibromyalgia - Based on Self-Reported Symptoms- is Subject to the 24

9             Month Limitation

10       The administrative record proves that Plaintiff's disability claim for fibromyalgia was

11  primarily based on self reported symptoms and therefore benefits were also subject to the

12  combined 24 month limit.  Specifically, the diagnosis was based on Plaintiff's complaints of pain

13  and fatigue.  (PRUR 00906; 00429; 00446; 00774; 00794; 00698 – 00699)   Per the physician

14  reviews as of March 2006, for the most part, there were "woefully lacking [records] and a well

15  detailed physical exam" of Plaintiff.   Plaintiff's physical examinations did not support use of a

16  cane. (PRUR 00212)  The fibromyalgia diagnosis was found to be self-reported because it was

17  based entirely on subjective complaints of tenderness along the body.  (PRUR 00214)

18       In, *Jordan v. Northrop Grumman*, 370 F. 3d 869 (9th Cir. 2003), the Plaintiff's disability

19  claim dealt with fibromyalgia and the Court engaged in a detailed discussion regarding the

20  diagnosis. Although the case did not deal specifically with a limitation period, the Plaintiff in

21  *Jordan,* just as here, complained of low back pain and leg pain to her physician, who opined that

22  she had fibromyalgia.  *Id.*  Plaintiff was referred to a number of other physicians who made the

23  diagnosis based on her pain complaints.  *Id. Jordan* explained the "'consensus' construct of

24  fibromyalgia identifies the syndrome as associated with generalized pain and multiple painful

25  regions . . . . Sleep disturbance, fatigue, and stiffness are the central symptoms."  *Id.* at 872.

26  *Jordan* stated that "fibromyalgia's cause or causes are unknown, there is no cure, and, **of greatest**

27  **importance to disability law**, its **symptoms are entirely subjective."** 370 F. 3d. 872.

28  (Emphasis added).  Furthermore, there are "no recognizable objective basis for symptoms" *Id.* at

1  873 and "fibromyalgia is a medical label that, cannot be objectively proved." *Id.* at 877. *Jordan*

2  noted, symptoms of fibromyalgia consist of the patient's reports of pain and nothing else. *Id.*

3  The Court did not reach a decision based on the plaintiff's symptoms in *Jordan*, but affirmed the

4  termination of disability benefits based upon the lack of records showing her condition rendered

5  her unable to work. *Id. See also Chellino v. Kaiser Found. Health Plan, Inc., No. C 07-03019*

6  *CRB, 2008 U.S. Dist. LEXIS 23902 (N. D. Cal. March 26, 2008) at *25 (citing: Hawkins v. First*

7  *Union Corp. Long-Term Disability Plan, 326 F.3d 914, 916 (7th Cir. 2003)); and Glover v. SBC*

8  *Communs. Inc., No. C 07-02652 CRB, 2008 U.S. Dist. LEXIS 15608  (N.D. Cal. February 29,*

9  *2008) at *23-24.*

10      Plaintiff may argue that her sleep study showing intrusion in stage III and stage IV sleep

11  was an objective finding.  However, Prudential's independent physician review showed the

12  findings are not specific to fibromyalgia and can actually be found in normal individuals as well

13  as in depressed individuals who have experienced viral illnesses. (PRUR 00214)  The diagnosis

14  of chronic fatigue syndrome (another ailment Plaintiff claims is disabling) also appeared to be

15  based entirely on Plaintiff's complaints of fatigue associated with Epstein-Barr viral antibody.  It

16  was found to be highly unlikely that her condition at that point could be directly attributable to

17  Epstein-Barr virus.  Plaintiff's fatigue complaints were found to be *more likely related to*

18  *psychiatric issues. Id.*  Plaintiff also underwent an Independent Medical Examination with Alan

19  Kimelman, M.D.   Although he found Plaintiff complained of pain and tenderness, he noted that

20  her various behaviors of exhibiting pain behavior, talking loudly, using profanity, frequently

21  interrupting the exam to complain of pain, and requesting her husband assist with activities

22  registered the highest level of Waddell scores, corroborating ***symptom magnification***.  (PRUR

23  00185)  Ultimately, Dr. Kimelman opined that Plaintiff's  conditions were more psychiatric than

24  orthopedic, neurological or musculoskeletal. Id.  Furthermore, with respect to chronic fatigue,

25  clinical evaluation of patients with a fatiguing illness recommends various testing including

26  among other things, urinalysis, total protein, glucose, c-reactive protein, phosphorus,

27  electrolytes, complete blood count with leukocyte differential, alkaline phosphates, creatinine,

28  blood urea nitrogen, albumin, ANA and rheumatoid factor, globulin, calcium, alanine

Points and Authorities in Support of          Case No. CV 07-06426 (WHA)
Motion for Summary Judgment

1    aminotransferase or aspirate transaminasc serum level, thyroid function test. (PRUR 01023)

2    None of the these tests were performed.

3        The records strongly support the fact that – just like the court defined it in *Jordan*, the

4    Plaintiff's claim of fibromyalgia in this case is primarily based on self-reported symptoms of

5    pain, fatigue and tenderness.  There are no objective findings of fibromyalgia.  The only

6    findings, like in *Jordan*, are determinations made by Plaintiff's treating doctors, based upon

7    Plaintiff's subjective complaints of pain and tenderness.  Therefore, the "manifestations of

8    [Plaintiff's] condition which [she told her] doctor" and were "not verifiable using tests" are self

9    reported and limited by the 24 month period.  Accordingly, her fibromyalgia claim as well as her

10   mental illness claim, were subject to the combined limited 24 month disability benefit period.

11   Therefore, and because Prudential fully paid for benefits for the total period, there are no genuine

12   issues of material fact to be determined.

13

14   **IV.    CONCLUSION**

15       There is no question that Plaintiff has a mental illness and therefore it is undisputed that

16   the 24 month benefit limitation applied to that condition.  With respect to Plaintiff's

17   fibromyalgia, the administrative record reflects that the diagnosis was entirely based on self

18   reports and self diagnosis.  The records also reflect the questionable practice of Plaintiff

19   preparing her own reports on her condition and symptoms, and thereafter had them signed by her

20   various physicians.  The Administrative Record also shows plaintiff underwent a three part

21   independent medical exam which revealed she magnified her symptoms.  In sum, the records

22   lack objective findings of Plaintiff's fibromyalgia diagnosis.  Given that Plaintiff's entire claim

23   for LTD benefits for fibromyalgia  and chronic fatigue syndrome rest on her self-reports and

24   self-diagnosis, the 24 month benefit limitation was applied.  Per The Plan, Prudential fulfilled its

25   obligations and paid Plaintiff the 24 months of disability.

26   / / /

27

28

Points and Authorities in Support of                          Case No. CV 07-06426 (WHA)
Motion for Summary Judgment

1   Therefore, there being no genuine issue of material fact, Defendants respectfully request this

2   court enter summary judgment in their favor.

3

4   DATED:  June 5, 2008

5                                                   GORDON & REES LLP

6
                                                    By: _____
7                                                        Ronald K. Alberts
                                                         Tad A. Devlin
8                                                        Attorneys for Defendants
                                                         SCENE 7, INC. LONG TERM
9                                                        DISABILITY PLAN, PRUDENTIAL
                                                         INSURANCE COMPANY OF AMERICA
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Points and Authorities in Support of          Case No. CV 07-06426 (WHA)
Motion for Summary Judgment