# Richard Johnston
## Attorney at Law
131-A Stony Circle, Suite 500
Santa Rosa, California 95401
(707) 577-7422

Fax (707) 837-9532

# FAX COVER SHEET

FAXED TO: (866) 285-8569

|              |                  |
|--------------|------------------|
| To:          | James E. Furman  |
| Of:          | Prudential       |
| From:        | Richard Johnston |
| Client/Matter: | Dawn Rutherford |
| Date:        | August 18, 2006  |

Number of Pages (including this cover sheet): 4

COMMENTS: Please see accompanying correspondence.  Thank you.

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED. CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ADDRESS ABOVE VIA THE U.S. POSTAL SERVICE. THANK YOU.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE TELEPHONE US IMMEDIATELY AT (707) 577-7422

PRUR00191

**RICHARD JOHNSTON**
Attorney at Law
131-A Stony Circle, Suite 500
Santa Rosa, California 95401
(707) 577-7422
Fax (707) 7837-9532
e-mail: RichardJohnstonEsq@gmail.com

August 18, 2006

**Via fax only (866) 285-8569**

James E. Furman
Appeals Analyst
The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480
Philadelphia, Pennsylvania 19101

Re:    Claimant:           Dawn A. Rutherford
       Control #/Br:       76787 / 00001
       Claim #:            10421380
       Social Security #:  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
       Date of Birth:      02/18/1962

Dear Mr. Furman:

    I am in receipt of correspondence from your independent medical review vendor, MLS National Medical Evaluation Services, Inc., scheduling yet a third examination for Ms. Rutherford with Alan Kimelman, M.D. This examination is scheduled for August 23. Before this third examination proceeds, I believe it is important to raise several important concerns based on Dr. Kimelman's first two examinations of Ms. Rutherford.

    To begin with, it remains a mystery to me why this series of examinations is necessary in the first place. As you are no doubt aware, Ms. Rutherford's claim with Prudential has a long and complex history, to which the present series of examinations only adds. Your file will reflect that Ms. Rutherford's claim was initially denied outright on December 10, 2001, based on Prudential's view that Ms. Rutherford's condition was not severe enough to preclude her from working at her own occupation. Ms. Rutherford appealed this determination, and on May 22, 2002, Prudential advised it would be providing benefits for 24 months based on Ms. Rutherford's disabling psychological condition, but that her physical disability, caused by her fibromyalgia and chronic fatigue syndrome, was considered by Prudential to be subject to a plan exclusion for pre-existing conditions.

    Later, in an August 26, 2003 letter, Prudential formally advised Ms. Rutherford her benefits would terminate in November 2003, at such time as the 24 month benefit period for psychological disabilities expired. Respecting her physical disability, Prudential did not invoke (nor even mention) any exclusion for pre-existing conditions, but this time it asserted "we have determined that as of November 12, 2003, you no longer meet the definition of disability from a physical standpoint and have been paid through the benefit limitation for a psychological condition. Therefore, we have terminated your claim effective November 12, 2003."

    Ms. Rutherford appealed the termination of her benefits, and on July 27, 2004, Prudential advised her the termination of her benefits had been upheld on administrative appeal. This time, Prudential did not claim Ms. Rutherford was not "disabled from a physical standpoint," but instead invoked plan exclusions, which, it maintained, precluded

PRUR00192

James E. Furman
Re: Dawn Rutherford
August 18, 2006
Page 2

payment of further benefits notwithstanding her continuing disability. First, Prudential claimed her disability was subject to a 24 month benefit limitation (which had already been satisfied) for physical disabilities "due to a sickness or injury which, as determined by Prudential, are primarily based on self-reported symptoms." Second, Prudential returned to the exclusion for pre-existing conditions, claiming that Ms. Rutherford had experienced symptoms of her disabling physical condition for which an ordinarily prudent person would have consulted a healthcare provider in the three months just prior to her effective date.

This decision, in turn, was appealed by way of my letter of July 28, 2005. In that letter, I demonstrated that Ms. Rutherford's condition was not "self-reported" inasmuch as it had been confirmed, over and over, and by independent practitioners, by tests, procedures and clinical examinations standardly accepted in the practice of medicine. I also demonstrated that Prudential's alternative rationale for denying Ms. Rutherford's claim, the pre-existing condition exclusion, was without merit based on the medical documentation contained within the administrative record.

At no point has Prudential taken issue with either of these points. Rather, Prudential's next response was to indicate that it was unable to make a determination on Ms. Rutherford's claim, inasmuch as an independent medical examination would be required first. See, for example, your letter of June 19, 2006. This is perplexing in that Prudential had already determined that Ms. Rutherford's physical condition is disabling. This is necessarily the case in that Prudential at one point claimed that her physical condition was not disabling, but, having conducted further review and evaluation, thereafter abandoned that position in favor of claiming that although disabling, her condition was either "self-reported" or pre-existing. Both these rationales have now been shown to be without merit, and it appears that Prudential is now attempting to revisit the question of whether her physical condition is disabling, notwithstanding that that question has already been evaluated and resolved in Ms. Rutherford's favor. For these reasons, I believe the current series of examinations by Dr. Kimelman is unwarranted and that the proper course is for Prudential to pay to Ms. Rutherford all disability benefits owing to her forthwith, and to begin paying her monthly benefits going forward.

That notwithstanding, in order to cooperate as fully as possible with Prudential's demands in this matter, Ms. Rutherford has agreed to appear at Dr. Kimelman's office for an examination. The circumstances surrounding Dr. Kimelman's examination, unfortunately, have served only to raise additional concerns.

During the initial examination, it became apparent to Ms. Rutherford and her husband, who also attended, that Dr. Kimelman had not reviewed any of Ms. Rutherford's medical records prior to the beginning of the examination. In fact, the vast majority of the allotted two-hour appointment was devoted to Dr. Kimelman's review of Ms. Rutherford's chart, as distinguished from an actual examination of Ms. Rutherford. What examination there was consisted of Dr. Kimelman's request that Ms. Rutherford engage in a few range-of-motion exercises and, when she was unable to perform the maneuvers he described, he proposed that he move her limbs externally. At this point, despite earlier reassurances that no pain would be involved in the examination, Dr. Kimelman advised Ms. Rutherford that most of his manual fibromyalgia exams caused pain to the subject and that she could expect to experience pain for several days after the examination. Upon learning that Ms. Rutherford had not taken her usual pain medications preparatory to the examination, Dr. Kimelman insisted that the examination be rescheduled so that he could examine Ms. Rutherford after she had taken her medications. This, in and of itself, demonstrates that Ms. Rutherford is disabled, as the side effects of her pain medications are themselves disabling, inasmuch as they compromise her ability to concentrate and cause her to be

PRUR00193

James E. Furman
Re: Dawn Rutherford
August 18, 2006
Page 3

drowsy among other things.  Not only is she not fit to work, apparently Dr. Kimelman does not feel she is even fit to be examined by a physician except when she is under the influence of these disabling medications.

At all events, as Dr. Kimelman insisted, Ms. Rutherford appeared for a second two-hour appointment (thus bringing her time to date with Dr. Kimelman to a total of four hours, for what had been represented to her as a 45 minute examination).  According to Ms. Rutherford, on this occasion Dr. Kimelman's explanations of the tasks she was to perform as part of the examination were quite vague, and he refused her request that he demonstrate the maneuvers, offering only verbal explanations which were difficult for Ms. Rutherford to understand (that is perhaps not surprising considering she was under the effects of her pain medications during this examination).  Moreover, Dr. Kimelman himself suggested that Ms. Rutherford should rest between maneuvers, based as I understand it on the patent effects the examination was having on her.  This examination, like the first one, caused Ms. Rutherford a great deal of pain and discomfort, in addition to significant stress and anxiety.

As discussed above, all this seems quite unnecessary in view of the fact that Prudential has already evaluated the question of whether Ms. Rutherford is physically disabled and has found that she is.  Moreover, Prudential's alternative rationales that her condition was "self-reported" or pre-existing have been shown to be without merit.  I am at a loss to understand why Dr. Kimelman's input is required at all under these circumstances.

In any event, before Ms. Rutherford appears for the third examination on August 23, I want to make it clear that, barring unforeseeable circumstances beyond the control of Prudential and Dr. Kimelman, it is quite unlikely that I would advise Ms. Rutherford that she has to appear for yet a fourth examination.  Moreover, Ms. Rutherford's treating physician, Dr. Erskine, has advised her to decline to perform any maneuvers which she feels would be painful or might further injure her.  Therefore, I would suggest that Prudential consider this third examination to be the final examination Dr. Kimelman will conduct on Ms. Rutherford, and that it appreciate and respect the fact that Ms. Rutherford will not subject herself to any tests or maneuvers which are unduly painful or injurious.  If these terms are not acceptable to Prudential, I suggest that you contact my office right away so that we may discuss the matter and attempt to achieve some sort of accommodation before any further examination proceeds.

In all, Ms. Rutherford has bent over backwards in order to meet Prudential's various demands during the course of the processing of this disability claim.  Prudential has treated her with disdain, and has fallen far short of fulfilling its obligations to her as a fiduciary under ERISA.  Should Ms. Rutherford choose to follow my contemplated advice, she will be invoking judicial remedies in the event Prudential does not promptly approve her disability claim, pay to her all disability benefits which have accrued to date with appropriate interest, and began to pay her monthly benefits going forward.

Very truly yours,

Richard Johnston

RJ/jrj

cc:    MLS National Medical Evaluation Services, Inc. (via fax (248/356-6757))

PRUR00194

IU: claim                          FROM:   L  a  u  s  u w i u t                    Lilt: i   Aug  / .  J 16:12 EDI

# Facsimile

Prudential  Financial

The Prudential Insurance Company of America
Tel    1-800–842-1718ext5159
Fax    1-973-548-7860

| To | claim | Fax Number | 8662858569 |
| --- | --- | --- | --- |
| From | Barbara Schmidt | Date | 08/07/2006 04:16:09 PM |
| Subject | Fw: Dawn Rutherford #10421360 MLS Title clarification letter | | |

**Comments:**

The information in this facsimile may be confidential, and is intended only for the use of the individual or entity addressed above. Any reader who is not the intended recipient of this communication, or an agent responsible for delivering it to the intended recipient, is strictly prohibited from disseminating, distributing, or duplicating it. If you have received this facsimile in error, please notify the sender by telephone immediately.  Thank you.

PRUR00195

From:    Barbara Schmidt@PRUDENTIAL on 08/07/2006 04:16 PM
To:       claim@8662858569@fax
cc:
Subject:  Fw: Dawn Rutherford #10421380 MLS IME confirmation letter


---- Forwarded by Barbara Schmidt/GLDI/INST/Prudential on 03/07/2006 04:15 PM ----

          **Barbara**
          **Schmidt/GLDI/INST/Prudential**
          **GLDI**                              To
          Phone Number:                             claim@8662358569
          1-800--842-1718ext5159
          Fax Number: 1-973-548-7860           cc

          Mcn 08/07/2006 04:11 PM              Subject
                                                   Dawn Rutherford #1C421380 MLS IME confirmation letter



August 7, 2006




Dawn Rutherford

C/o Richard Johnson

131 –A Stony Circle, Suite 500

Santa Rosa, CA  95401



Re:        Independent Medical Examination

           Claim #: 10421380



Dear Dawn Rutherford:


Per the request of PRUDENTIAL INSURANCE CO, an independent medical evaluation has

been scheduled with

**DOCTOR:** Alan Kimelman, M.D.
750 Las Gallinas Avenue, Suite 110

San Rafael, CA 94903
800-274-4396

**DATE:** Wednesday 8/23/2006  (continuation from 8-2-2006)

**TIME:** 10:00 AM

Please bring any diagnostic tests and x-rays with you to the examination.

IF YOU NEED TO RESCHEDULE YOUR APPOINTMENT, PLEASE DO NOT CALL THE DOCTOR'S OFFICE.  THEY WILL NOT BE ABLE TO CHANGE YOUR APPOINTMENT.

If you need directions, call the number listed above. Failure to appear for the above scheduled examination could result in the billing of a no-show fee.

Sincerely,

MLS National Medical Evaluation Services

TO: claim                    FROM:   L   a   , _iu.

# Facsimile

## Prudential ⏚ Financial

**The Prudential Insurance Company of America**
Tel    1-800–842-1718ext5159
Fax    1-973-548-7860

| To | claim | Fax Number | 8662858568 |
|---|---|---|---|
| From | Barbara Schmidt | Date | 08/03/2006 10:16:18 AM |
| Subject | Dawn Rutherford #10421380 EE attending | Total Pages | 2 |

**Comments:**

The information in this facsimile may be confidential, and is intended only for the use of the individual or entity addressed above. Any reader who is not the intended recipient of this communication, or an agent responsible for delivering it to the intended recipient, is strictly prohibited from disseminating, distributing, or duplicating it. If you have received this facsimile in error, please notify the sender by telephone immediately. Thank you.

TO: claim                    FROM: l a  mio

---- Forwarded by Barbara Schmidt/GLDI/INST/Prudential on 08/03/2006 10:14 AM ----

"Jennifer VanVianen"
<JVanVianen@mls-ime.com>

Wed 08/02/2006 05:04 PM

To
        <barbara.schmidt@prudential.com>
cc

Subject
        Appointment Status

Dear Barbara Schmidt,

This is to notify you that Dawn Rutherford showed for the appointment with Dr.
Kimelman on 8/2/2006. A final copy of the report will be forthcoming. If we can
be of any further assistance please do not hesitate to contact me.

Thank you,

Walkaus, Sharon
swalkaus@mls-ime.com

MLS National Medical Evaluation Services, Inc.

TO: claim                    FROM:    L a    wiu.                    DATE:  Thu Jun 22 ... J 12:31 EDT

# Facsimile

 **Prudential Financial**

**The Prudential Insurance Company of America**
Tel    1-800-842-1718ext5159
Fax    1-973-548-7860

| To | claim | Fax Number | 8662858569 |
|---|---|---|---|
| From | Barbara Schmidt | Date | 06/22/2006 12:33:16 PM |
| Subject | Rutherford #10421380  MRG IME cont | Total Pages | 3 |

**Comments:**

The information in this facsimile may be confidential, and is intended only for the use of the individual or entity addressed above.  Any reader who is not the intended recipient of this communication, or an agent responsible for delivering it to the intended recipient, is strictly prohibited from disseminating, distributing, or duplicating it. If you have received this facsimile in error, please notify the sender by telephone immediately.  Thank you.

PRUR00200

TO: claim                                FROM:    claim                              DATE: Thu Jun 22 2 12:31 EDT

From:     Barbara Schmidt@PRUDENTIAL on 06/22/2006 12:33 PM
To:       claim@8662858569@fax
cc:
Subject:  Rutherford #10421380 MRG IME conf letter

PRUR00201

IU:  claim                          FRUM:                    DATE:  Thu Jun 22 ... 15:32 EDT

# Facsimile

## Prudential  Financial

**The Prudential Insurance Company of America**
Tel   1-800–842-1718ext5159
Fax   1-973-548-7860

| To | claim | Fax Number | 8662858560 |
|---|---|---|---|
| From | Barbara Schmidt | Date | 06/22/2006 03:33:45 PM |
| Subject | Rutherford #10421380    MLS FCE co | Total Pages | 2 |

**Comments:**

The information in this facsimile may be confidential, and is intended only for the use of the individual or entity
addressed above. Any reader who is not the intended recipient of this communication, or an agent responsible for
delivering it to the intended recipient, is strictly prohibited from disseminating, distributing, or duplicating it. If you
have received this facsimile in error, please notify the sender by telephone immediately.  Thank you.

PRUR00202

TO: claim                          FROM:    L  a  c  miot          DATE:  Thu Jun 22 2   3  15:32 EDT

From:     Barbara Schmidt@PRUDENTIAL on 06/22/2006 03:33 PM
To:       claim@8662858569@fax
cc:
Subject:  Rutherford  #10421380    MLS FCE conf letter

Per the request of PRUDENTIAL INSURANCE CO, an independent medical evaluation has
been re-scheduled with


         **DOCTOR:**   Alan Kimelman, M.D.
                       750 Las Gallinas Avenue, Suite 110

                       San Rafael, CA 94903
                       800-274-4396

         **DATE:**     Wednesday 7/12/2006

         **TIME:**     10:00 AM

PRUR00203

# Facsimile

**Prudential**  **Financial**

**The Prudential Insurance Company of America**
Tel    1-800–842-1718ext5159
Fax    1-973-548-7860

| To | claim | Fax Number | 8662858569 |
|---|---|---|---|
| From | Barbara Schmidt | Date | 04/28/2006 03:34:00 PM |
| Subject | Rutherford/10421380/IME vendor conf | Total Pages | 4 |

**Comments:**

The information in this facsimile may be confidential, and is intended only for the use of the individual or entity addressed above. Any reader who is not the intended recipient of this communication, or an agent responsible for delivering it to the intended recipient, is strictly prohibited from disseminating, distributing, or duplicating it. If you have received this facsimile in error, please notify the sender by telephone immediately. Thank you.

PRUR00204

From:    Barbara Schmidt@PRUDENTIAL on 04/28/2006 03:34 PM
To:      claim@8662858569@fax
cc:
Subject: Rutherford/10421380/IME vendor conf letter


Exam Confirmation attached.  Please review, and contact me w/any questions.
Thank you

PRUR00205

TO: claim                          FROM:    L  a   mio               Date: Fri Apr 29 2  5  15:32 EDT

Exam Confirmation attached.  Please review, and contact me w/any questions.  Thank you

IO: claim                    FROM:                          DATE: Fri Apr 28 15:32 EDT



Medical Resource Group, Inc.
26016 Detroit Rd., STE 5
Westlake, OH 44145
440-250-0424 • Fax 440-250-0429

# Exam Confirmation

April 28, 2006

ATTN: Barbara Schmidt RN
Prudential Financial
290 Mount Pleasant Avenue
Livingston, NJ 07039

FAX #: (973) 548-7690

Dear Barbara Schmidt RN,

Thank you for scheduling the following appointment with Medical Resource Group:

| Examinee | | Appointment | |
|---|---|---|---|
| *Name:* | Dawn Rutherford | *Date:* | Wednesday, May 17, 2006 |
| *Soc. Sec:* | | *Time:* | 11:00 AM |
| *Claim #:* | 10421380 | | |
| Provider | | Appointment Location | |
| Anita W. Roth, M.D.  Physical Medicine & Rehabilitation | | *Address:* | 80 Grand Ave. 5th Floor  Oakland, CA 94612 |

Should you have any questions, please feel free to call me at (440) 250-0424.

Thank you,

Joy Lopes

C:\ConvSrv01\Work\0428_153413_671.DOC

PRUR00207

March 26, 2006

James Furman
The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480
Philadelphia, PA 19101

RE:    Claimant:         Dawn Rutherford
       Control #/Br:     76787 / 00001
       Claim Number:     10421380
       Date of Birth:    02/18/1962

Dear Mr. Furman:

I reviewed the records forwarded to me relating to Ms. Rutherford. The medical records included but were not limited to the following:

- SOAP notes;
- PO letter;
- Medical records from Dr. Gerson, M.D., psychiatry, file review April 2002;
- Job description;
- Claimant information;
- Claimant attorney information;
- Medical records from Dr. Badham, Ph.D., psychology, August 1 to November 2002;
- Medical records from Dr. Leoni, family practice from August 2001 to September 2001;
- Petaluma Valley Hospital records from August 2001 to May 2005;
- Medical records from Dr. Michael Kurtz, orthopedic, dated September 2001 to December 2001;
- Records from Dr. Finzen and Dr. Park, PCP, dated October 2001 to December 2001;

RE: Dawn Rutherford
March 26, 2006
Page 2

- Records from a Dr. Jeffrey Mandel, family practice, dated October 2001 to January 2001;
- Records from a Dr. Peter H. Stein, M.D., rheumatology, dated January 14, 2002;
- Records from Dr. Waxman dated January 2002;
- Records from a Dr. Polillo, M.D., from the Petaluma Health Clinic dated January 2002 to March 2002;
- Records from a Dr. Trahms, M.D., psychiatrist, from January 2002 to January 2006;
- Records from a Dr. McCarthy, M.D., dated February 2002;
- Records from a Dr. Lehman dated April 2003;
- Records from a Dr. Ranadive, M.D., dated May 2005 to June 2005;
- Records from Physiotherapy Associates dated October 2001 to January 2002;
- Records from the Social Security Administration;
- Medication records;
- Records from a Dr. Erskine, osteopathic physician dated September 2002 to December 2005;
- Records from Dr. Fassin documenting a sleep study performed on Ms. Rutherford on December 4, 2001.

The records indicate that Ms. Dawn Rutherford is a 44-year-old female who is employed as a Software Product Producer and whose last day of work was August 14, 2001. She has been off work for problems related to chronic fatigue, back pain, fibromyalgia, and nausea as well as depression and anxiety. She was, apparently, given a 2-year long-term disability for a psychiatric diagnosis from November 12, 2001, to November 12, 2003. However, the long-term disability benefits were terminated as of November 12, 2003. She is currently appealing for long-term disability benefits based upon a diagnosis of fibromyalgia and chronic fatigue syndrome.

Apparently, the diagnoses of chronic fatigue syndrome and fibromyalgia were subject to the pre-existing condition policy exclusion. This exclusion indicates that conditions that are diagnosed through the claimant's self-reported symptoms are not considered compensable for long-term disability.

The records indicate that Ms. Rutherford apparently presented in early August of 2001 to her primary care physician (PCP), complaining of exhaustion and nausea, vomiting, and hot flashes.

RE: Dawn Rutherford
March 26, 2006
Page 3

She also complained of weight loss and severe anxiety and forgetfulness. She later went on to describe symptoms that were diagnosed as irritable bowel syndrome. It was apparently somewhat prior to this time that she had complained of viral-type symptoms. She underwent some laboratory testing and was found to be negative for Lyme disease. She also had plain x-rays performed of her back that showed some mild degenerative changes and a partial lumbarization of S1. In addition, because of the persisting complaints of back pain, she had an MRI of the lumbosacral spine performed on September 18, 2001, that only showed mild degenerative changes at L3 through S1 but no herniation or disc bulging.

She presented to Dr. Michael Kurtz for evaluation. Dr. Kurtz is an orthopedic surgeon, and he, apparently, diagnosed her with fibromyalgia based upon trigger points.

She also went to see a variety of other physicians, including a Dr. Jeffrey Mandel, who is a family practitioner, apparently, who specializes in treating chronic pain patients. He also evaluated her and diagnosed her with fibromyalgia.

She underwent a sleep study on December 13, 2001, that showed the absence of stage 3 and 4 sleep as well as alpha delta sleep. This particular sleep pattern is common in fibromyalgia patients.

She also had an episode of presenting to the emergency room on December 13, 2001, complaining of flailing movements and tremor, and it was felt that this was due to a probable drug reaction. About 3 months prior to that, she had presented to the emergency room complaining of severe sleepiness and nausea after taking, apparently, too many Xanax and Tylenol #3s. She reported that this was done entirely by accident and that she had not planned to harm herself. She has also been seen by mental health experts who have diagnosed her with severe depression and anxiety and agoraphobia.

The records indicate that Ms. Rutherford was somewhat intolerant to a variety of medications used to treat her depression and anxiety. She was also treated with a variety of opiates for her chronic pain, and there is a report that this resulted in stuttering and facial paralysis.

In addition, the records indicate that Ms. Rutherford did not respond very well to psychotherapy and the medications and spent a great deal of her time in bed.

PRUR00210

RE: Dawn Rutherford
March 26, 2006
Page 4

There was also a report that she had become somewhat delusional in her thinking.

She is currently treating with Dr. Erskine, an osteopathic physician, and receiving osteopathic manipulative therapy (OMT) for her fibromyalgia. However, the medical records from Dr. Erskine are largely illegible, since most of the reports and findings are handwritten. From what I can discern from these records, Dr. Erskine is treating her for a variety of somatic dysfunctions located in the spine and pelvis region. However, her neurologic exam is considered normal, and she was noted to have a normal alignment of the spine.

The records also indicate that Ms. Rutherford has been ambulating with a cane that she states she uses because of problems with balance.

In terms of physical findings by physicians, there appears to be a paucity of abnormalities. Dr. Kurtz saw her on September 26, 2001, and there is a handwritten, copied report of a physical that is somewhat difficult to decipher. A typed report that is dated December 17, 2002, appears to be a compilation of findings from previous exams. This report indicates that Dr. Kurtz found multiple trigger points upon digital palpation of the shoulders, back, and neck and observed swelling in the hands and joints of Ms. Rutherford's fingers, and it is not clear what he means by that. He also noted a 50% lack of dexterity; once again, that is rather ambiguous, and it is not how he tested her dexterity. He also measured her grip strength, I am assuming with a dynamometer, and she scored low levels with her right hand. However, this test can be low due to voluntary pain inhibition on the part of the claimant or lack of effort.

There was an indication that the insurance carrier had requested a functional capacity evaluation, but I do not see in the records where this was ever done.

Another physical exam was apparently performed by a nurse practitioner in the office of Dr. Park on October 19, 2001, and this was reported as normal without any evidence of abnormality apart from subjective complaints of tenderness at various spots on her body.

There is a medical report dated December 20, 2001, from Dr. Jeffrey A. Mandel that essentially is a treater of fibromyalgia but does not actually outline any functional deficits found on examination of Ms. Rutherford.

PRUR00211

RE: Dawn Rutherford
March 26, 2006
Page 5

Dr. Mandel reports that Ms. Rutherford was exhibiting tender points to palpation in a variety of areas on both the right and left side of the body and also reported that the claimant complained of numbness in her upper right leg associated with a needle-like sensation. However, the report does not indicate whether or not he actually tested this region for hypoesthesia. Also, he noted some swelling and redness in the joints of the claimant's right and left hand, which is interesting, since swelling of the joints is not a finding associated with fibromyalgia. Also, Dr. Mandel, on the same report, states the claimant is "unable to walk without the aid of cane and the assistance of her husband due to a 50% lack of mobility." Nowhere in the report does he explain why Ms. Rutherford needs to walk with a cane. There is no evidence of a physical exam having been conducted on her lower extremities to determine whether or not there was weakness or loss of sensation or atrophy involving the extremities.

The remainder of the records follows a similar sort of a presentation in that the doctors state that Ms. Rutherford has severe fibromyalgia, fatigue, and a sleep disorder and very poor tolerance of activity. However, there simply is not a detailed and well-performed physical done of this individual anywhere in the records that I could find. Nor is there any evidence in the records of a functional capacity evaluation having been performed on this individual to ascertain exactly what she is capable of doing on a physical level.

The only thing that appears clear from the records is that Ms. Rutherford has significant mental illness that has precluded her from returning to work. It is interesting that the time that she initially presented to her physician complaining of back pain and other assorted complaints corresponds to the time period when, apparently, there were some tragedies associated with her family, and I am not sure if this is connected.

I have been asked to answer questions regarding this case.

1. *Based on the documentation reviewed, does Ms. Rutherford have functional impairments from November 12, 2003, forward?*

   Actually, I cannot answer that question because the records that I have are woefully lacking in a well-detailed physical exam of Ms. Rutherford. Statements are made about her capacity or inability to do certain things such as activities of daily living, but nowhere is it actually documented that this has been observed. Also, the physical exams have not supported, for instance, the use of a cane.

RE:  Dawn Rutherford
March 26, 2006
Page 6 .

It is noted in the medical records that she does use, apparently, a single-point cane to ambulate, but there is no evidence in the records to indicate that this individual is suffering from an affliction of her lower extremities that would preclude her from walking without this device.  At this point, I would recommend that she be referred to a physician, preferably a physical medicine and rehabilitation physician, for a complete and detailed physical exam that documents her functional abilities and also recommend that she have a functional capacity evaluation as well.

2. *Please identify appropriate restrictions and/or limitation in terms of the Claimant's ability to sit, stand, walk, lift, reach, carry, etc., based on the functional impairments you have listed above.*

I am unable to do that because the documentation is incomplete.  There is simply not enough documentation to justify any particular restrictions or limitations on this individual.  See #1.

3. *If the medical records are indicating significant impairment, please comment on expected treatment, duration, and prognosis.*

The medical records indicate that a number of physicians consider Ms. Rutherford disabled from gainful employment.  However, they do not back these statements up with any type of objective findings in their physical exams, and, in fact, in the records I have, most of the physical exams are incomplete.

Statements made about her abilities or inabilities are simply not supported by any objective findings, and it is not clear whether or not the exams were done and the objective findings were simply left out of the reports or whether full and complete physical exams were never performed on this individual.  The records seem to be a hodgepodge, kind of crazy-quilt of information regarding this individual with no one good, detailed, extensive physical exam of this individual having been done.  I should also note that there are several records where, apparently, the claimant actually typed up a report indicating all of her various complaints and impairments and then had the physician sign this report.  I question the appropriateness of this.  At this point, I would say that there is insufficient evidence to support a significant impairment, but I stress that it appears that the appropriate physical exams and testing have not been performed in order to make that determination.

RE: Dawn Rutherford
March 26, 2006
Page 7

4. *If you opine that Ms. Rutherford is not functionally impaired, please provide a detailed explanation.*

Please see the above questions. I believe the information provided is insufficient to give an accurate opinion.

5. *Do the medical records support significant adverse side effects, including cognitive deficit from any medication or combination of medications.*

The records indicate that Ms. Rutherford appeared in the emergency room at least twice with unusual symptoms that were attributed to the taking of medication. It does appear then that she may have suffered some adverse side effects to medications on at least one occasion. On the second occasion mentioned in the records, there appears to have been some overuse of the medications on a non-prescribed basis by the claimant.

6. *What conditions, if any, are self-reported? Did the claimant treat for the diagnosis of fibromyalgia and chronic fatigue syndrome from May 1, 2001, through July 31, 2001?*

The diagnosis of fibromyalgia is self-reported because it is based entirely on the subjective complaints of tenderness at various points along the body. The only possible objective finding regarding the diagnosis of fibromyalgia is the sleep study that was performed that showed some alpha wave intrusion and a decrease in her stage 3 and 4 sleep. However, these findings are not specific to fibromyalgia and can actually be found in normal individuals as well as in dysthymic, i.e., depressed individuals, and those who have experienced viral illnesses. So, I would hesitate to make the diagnosis of fibromyalgia based entirely on a sleep study. The diagnosis of chronic fatigue syndrome appears to be based entirely on her complaints of fatigue in association with an Epstein-Barr viral antibody that indicated an acute or recent exposure to the Epstein-Barr virus. While it is certainly possible that she was exposed to mononucleosis and did experience that disorder, it is highly unlikely that her condition at this point can be directly attributable to Epstein-Barr virus. We are now almost 5 years out from her initial symptoms, and I do not think that her current complaints of fatigue are of any relation to that at this point and are more likely related to psychiatric issues.

RE: Dawn Rutherford
March 26, 2006
Page 8

Whether or not she treated for these 2 conditions, the fibromyalgia and chronic fatigue syndrome, from May 1, 2001, to July 31, 2001, is not known, since the records that I have do not precede that period of time. Apparently, she had given a history to a nurse practitioner that she had treated for a problem that could possibly have been related to fibromyalgia and chronic fatigue syndrome, but the nurse practitioner amended her report and apparently stated that she had misquoted or mis-transcribed this information in her report, so unfortunately, I am not able to answer that question based on the medical records available to me for review.

Thank you for allowing me to review this case. Should you have any additional questions please contact me at Qualified Medical Examiners, Inc.

Sincerely,

April D. Campbell, M.D.
Diplomate, American Board of Internal Medicine
Diplomate, American Board of Physical Medicine and Rehabilitation

ADC/ljs  04-01361022.doc

RE: Dawn Rutherford
March 26, 2006
Page 9

James Furman
The Prudential Ins. Co. of America
Disability Management Services
P.O. Box 13480
Philadelphia, PA 19101

## INVOICE

FOR PROFESSIONAL SERVICES
RE: Medical Record Review
Claimant: Dawn Rutherford
Claim#: 10421380
Employer: Br: 76787 / 00001
Date of Review: March 26, 2006
Physician: April Campbell
Invoice #: 27116
QME Location: Southfield

Medical Record Review                                    $ 1500.00
6 hours at $250.00

Total Amount Due>>                      $ 1500.00

PRUR00216

RE:  Dawn Rutherford
March 26, 2006
Page 10


**TAX I.D. # 38-3399449**


Advance Building * 23077 Greenfield Road * Suite 245 * Southfield, MI 48075-
3744
*Phone (248) 424-7200 ** Fax (248) 424-5566*

PRUR00217

**RICHARD JOHNSTON**
Attorney at Law
131-A Stony Circle, Suite 500
Santa Rosa, California 95401
(707) 577-7422
Fax (707) 795-2922
e-mail: RichardJohnstonEsq@gmail.com

January 24, 2006

Tamika S. Artis
Disability Consultant
Prudential Disability Management Services
P.O. Box 13480
Philadelphia, Pennsylvania 19101

|  |  |  |
|---|---|---|
| Re: | Claimant: | Dawn A. Rutherford |
|  | Control #/Br: | 76787 / 00001 |
|  | Claim #: | 10421380 |
|  | Social Security #: | 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 |
|  | Date of Birth: | 02/18/1962 |

Dear Ms. Artis:

As you have requested, I am enclosing records dating from April 2003 to the present pertinent to Ms. Rutherford's care. These records have been provided by Drs. Trahms, Ranadive, and Erskine. Ms. Rutherford did not consult with Dr. Davidson during the time period in question. We have not received any response from Dr. Prince or Dr. Mandel; of course, pursuant to the authorization previously signed by Ms. Rutherford Prudential may pursue those records should it choose to do so.

I must admit to some continuing consternation regarding Prudential's interest in reviewing records for the time period April 2003 to the present. The pending administrative appeal responds to Prudential's denial of Ms. Rutherford's claim on two grounds: an asserted limitation based on so-called "self-reported conditions," and an exclusion for pre-existing conditions. Please refer to my letter of July 28, 2005 for further detail respecting the history of Ms. Rutherford's claim. That letter dealt at length with the only two reasons advanced by Prudential as justification for the termination of Ms. Rutherford's benefits. It is difficult to understand how an evaluation of records from April 2003 to the present could impact Prudential's review of its prior determinations on those issues, and those issues are all that is on the table.

Nonetheless, I trust Prudential has valid, good faith reasons for its interest in these materials, and that it certainly does not intend to seek to justify the termination Ms. Rutherford's benefits on some other, new rationale, which neither she nor I have yet had the chance to consider and discuss with you.

Please advise if further input from me is desired. Otherwise, I look forward to your letter conveying the resolution of this appeal and the reasons supporting it.

Very truly yours,

Richard Johnston

RJ/jrj
enc.

**RICHARD JOHNSTON**
Attorney at Law
131-A Stony Circle, Suite 500
Santa Rosa, California 95401
(707) 577-7422
Fax (707) 795-2922
e-mail: RichardJohnstonEsq@juno.com

July 28, 2005

Manager, Appeals Review Unit
Prudential Disability Management Services
P.O. Box 13480
Philadelphia, Pennsylvania 19101

> **Re:**  Claimant:          Dawn A. Rutherford
>         Control #/Br:       76787 / 00001
>         Claim #:            10421380
>         Social Security #:  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
>         Date of Birth:      02/18/1962

Dear Manager, Appeals Review Unit:

I represent Ms. Rutherford in connection with her claim for disability insurance benefits. Your file will disclose that Prudential terminated Ms. Rutherford's benefits in a letter dated August 26, 2003, and has proceeded to uphold that determination in an administrative appeal, reflected in Prudential's letter dated July 27, 2004. This is to perfect a further appeal, as described in the July 27 letter, and to request a reversal of the termination of Ms. Rutherford's benefits.

One preliminary issue merits immediate mention. In the August 26, 2003 termination letter, no deadline, whatever, was mentioned for the submission of administrative appeals under the plan in question. Likewise, the July 27, 2004 letter was devoid of any mention of any time limit for this appeal. Similarly, in letters dated December 19, 2001; December 20, 2001; January 24, 2002; and October 17, 2003, all of which claimed to explain to Ms. Rutherford or her legal representatives the administrative appeal procedure, not a single mention was made of any time limit or deadline.

On January 31, 2005, however, Prudential's Tamkia S. Artis wrote to me, and among other things advised "Do note that 180 days are allotted from the date our July 27, 2004 letter was received to submit your complete appeal." Ms. Artis' letter, however, was dated some 188 days after the date of the July 27 letter; that is to say, it was sent to me eight days after the deadline it attempted to impose would have expired. This was the first time any correspondence from Prudential made any mention, at all, of any time limit for the submission of administrative appeals.

Such time limits are unenforceable when the letter conveying the denial from which the appeal is to be taken fails to disclose the necessary information, including any deadlines, to allow for the appeal to be properly presented. *See, e.g., Burke v. Kodak Retirement Income Plan,* 336 F.3d 103, 107 (2d Cir. 2003) ("A written notice of denial must be comprehensible and provide the claimant with the information necessary to perfect her claim, including the time limits applicable to administrative review. A notice that fails to substantially comply with these requirements does not trigger a time bar contained within the plan"); *Epright v Environmental Resources Mgt., Inc. Health & Welf. Plan,* 81 F.3d 335, 342 (3d Cir. 1996) ("When a letter terminating or denying a claim does not explain the

Manager, Appeals Review Unit
Re: Dawn Rutherford
July 28, 2005
Page 2

proper steps for pursuing review of the termination or denial, the Plan's time bar for such a review is not triggered"); *see also White v. Jacobs Engineering Group*, 896 F.2d 344, 350 (9th Cir. 1989).

Here, Prudential gave written notice of the asserted deadline only *after* the deadline, according to Prudential at any rate, had already come and gone. This, of course, cannot withstand scrutiny, and the only deadline which is even arguable under the circumstances would have begun to run, at the very earliest, at the time Prudential finally did give written notice of same, i.e. on January 31, 2005. Inasmuch as 180 days from that date have yet to elapse, this appeal is therefore timely.

Turning to the merits of the appeal, your file will disclose that Ms. Rutherford's claim, based on diagnoses of fibromyalgia, chronic fatigue syndrome and severe depression, was initially denied outright on December 10, 2001, based on Prudential's views that Ms. Rutherford's condition was not severe enough to preclude her from working at her own occupation. Ms. Rutherford appealed this determination, and on May 22, 2002, Prudential advised it would be providing benefits for 24 months based on Ms. Rutherford's disabling psychological condition, but that her physical disability, caused by her fibromyalgia and chronic fatigue syndrome, was considered by Prudential to be subject to a plan exclusion for pre-existing conditions.

Later, in the August 26, 2003 letter, Prudential formally advised Ms. Rutherford that her benefits would terminate in November 2003, at such time as the 24-month benefit period for psychological disabilities expired.. Respecting her physical disability, Prudential did not invoke (nor even mention) any exclusion for pre-existing conditions, but this time it asserted "we have determined that as of November 12, 2003, you no longer meet the definition of disability from a physical standpoint and have been paid through the benefit limitation for a psychological condition. Therefore, we have terminated your claim effective November 12, 2003."

Ms. Rutherford appealed the termination of her benefits, and on July 27, 2004, the aforementioned letter advised her the termination of her benefits had been upheld on administrative appeal. This time, Prudential did not claim Ms. Rutherford was not disabled from a "physical standpoint," but instead invoked two plan exclusions, which, it maintained, precluded payment of further benefits notwithstanding her continuing disability. First, Prudential claimed her disability was subject to a 24-month benefits limitation (which had already been satisfied) for physical disabilities "due to a sickness or injury which, as determined by Prudential, are primarily based on self-reported symptoms." Second, Prudential returned to the exclusion for pre-existing conditions, and specifically an exclusion providing no benefits are payable if the claimant "had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 months just prior to your effective date of coverage...." In this connection, Prudential acknowledged that Ms. Rutherford had not in fact received any treatment during the 3-month period in question, but went on to claim:

Medical information contained in Ms. Rutherford's file did not reveal any office visits during the 3 month period noted above, however she was seen by a nurse practitioner in August 2001. This evaluation revealed Ms. Rutherford was reporting symptoms consistent with chronic fatigue syndrome and fibromyalgia for 2-3 weeks prior to this visit. In addition, Ms. Rutherford was seen on October 19, 2001 and reported her symptoms began after her layoff

# Petaluma Health Center

1301 Southpoint Blvd Ste A
Petaluma, CA
94954

April 25, 2003

To whom it may concern,

Re Dawn Rutherford claim # 1042-1380

I am writing this letter on behalf of Dawn Rutherford to provide an update of her medical conditions affecting disability. Please see the enclosed initial report filed by my predecessor in Ms. Rutherford's care, Dr. Polillo, dated March 28, 2002, wherein she described Mr. Rutherford's initial presentation and diagnostic work-up.

Ms Rutherford has received medical care at Petaluma Health Center since December of 2001. She has been treated for Fibromyalgia, Epstein Barr Infection, Chronic Fatigue Syndrome, Degenerative Disc Disease of the cervical and lumbosacral spine, Degenerative Joint Disease, Depression, Anxiety, Panic Attacks, Posttraumatic Stress Disorder, Insomnia.

Since I assumed her care April 11, 2002, I have observed no improvement in her condition. She continues her medical regimen of multiple medicines for pain including narcotic analgesics MS Contin and Norco, as well as celebrex, neurontin, trileptal and Soma; benzodiazepines for insomnia, muscle spasm and anxiety; psychiatric medicines including seroquel, wellbutrin. She has also been seeing an osteopathic physician for manipulation. She continues with regular hydrotherapy. She is seen by myself every 2 weeks.

Dawn continues to experience daily pain. Her mobility is limited due to decreased strength and flexibility. She has exquisite tenderness to palpation diffusely through her body with trigger points throughout the shoulder and hip girdles, her neck, back and extremities. She experiences paresthesias of hands and feet, and needs a cane to ambulate. Ms. Rutherford's pain is aggravated by staying in a single position for a prolonged period of time. She has significant symptoms around the temporomandibular joint which sometimes make speech very difficult for her. Ms. Rutherford is often unable to perform basic activities of daily living including walking, speaking, and self-care such as food preparation and bathing. Her mental state is compromised by her chronic pain, the medications she is obliged to take for it, as well as her recalcitrant insomnia, all of which interfere with her cognitive abilities and concentration. Her psychiatric conditions also contribute to her disability.

Ms. Rutherford's prognosis at this point is guarded. In the 20 months since her diagnosis, she has made little progress towards recovery, and continues to be completely disabled and unable to work. It is impossible to know how long her disability will last, although I anticipate at least another 12 months of full disability.

Please feel free to contact me should you have any further questions.

Sincerely,

Audra Lehman M.D.

September 1, 2003

**SENT VIA FAX & CERTIFIED MAIL**


Prudential Insurance Company
P.O. Box 13480
Philadelphia, PA 19101
ATT: Charmaine Caddette

Claimant: Dawn Rutherford
Claim # 10421380
DOB: 2/18/62


Dear Ms. Caddette,

**This letter shall serve to fully dispute your claim that Ms. Rutherford is physically able to return to her regular occupation.**

Your letter questions the lack of **physical** treatments that Ms. Rutherford has been provided. During the entire extent of Ms. Rutherford's disability, Prudential has been with substantial clinical evidence regarding the **physical** treatments she has undergone as well as the numerous specialists she has been physically examined by.

Ms. Rutherford has received treatments for joint and muscle problems at Physical Therapy Associates of Rohnert Park, California and the detailed reports have been provided to you. Ms. Rutherford has also sought massage therapy treatment as well as acupuncture treatment for the daily pain she experiences <u>as prescribed by Dr. Lehman her primary care physician</u>. She is currently being treated for her physical ailments by Dr. Yusef Erskine, Doctor of Osteopathy located in Sebastopol, California telephone # 707-829-5455 . <u>We have previously provided his contact information to you on several occasions and requested that his office be provided with your information requirements. Why hasn't he been contacted for the results of his physical examinations and details of his treatments?</u>

The above mentioned physical treatments address the severe pain Ms. Rutherford experiences in her back, neck, joints and extremities. Fibromyalgia has always been her primary diagnosis but Prudential has chosen to ignore this. We have provided numerous observations from physical examinations performed by rheumatologists who are **published experts** on Fibromyalgia attesting that Ms. Rutherford is afflicted with this physically disabling disease. **Why have these findings been ignored?**

Prudential has been provided with detailed pharmacy records indicating that Ms. Rutherford currently requires **a minimum of 120 mg. of Morphine daily** combined with 325 mg of Soma [4 times daily = 1,000 mg of Soma], two tablets of 10/325 Norco [4 times daily] and two 300 mg capsules [4 times daily = 2,400 mg daily total] of Neurontin for pain management. How on Earth can your physicians dispute that this course of medication is NOT indicative of an individual who is experiencing severe **physical** pain? What credentials and areas of specialization do the physicians reviewing Ms. Rutherford's case possess?

PRUR00430

Page Two

In addition, Prudential has also been previously provided with the results of a sleep study which indicated that she is suffering from a severe sleeping disorder [which is physical evidence of the existence of Fibromyalgia] and specified that she has an 83% reduced sleep efficiency. Ms. Rutherford does not reach Stages 3 or 4 of sleep where cell and tissue repair is performed by the body and restorative sleep is achieved. **Again, these are indisputable physical manifestations of Fibromyalgia.** What sleep specialist is on the board at Prudential reviewing these findings? We challenge him to speak to our doctor who maintains his own sleep clinic. Ms. Rutherford requires the use of prescription sleep aids Restoril, Ambien, and Halcion. This is yet another **physical** manifestation of her disability.

[illegible paragraph]

Fibromyalgia is a physical illness, recognized by the American Medical Association as well as the Federal Government i.e. the Social Security Disability Board. It is a complex illness requiring expert evaluation. Prudential has provided no such expert evaluation of Ms. Rutherford's condition or illness.

Attached please find a letter from Ms. Rutherford's primary care physician, Dr. Audra Lehman, which details Ms. Rutherford's current physical condition and treatments she has received. Please feel free to contact Dr. Lehman directly for copies of her current clinic visit notes, laboratory tests and professional observations. Ms. Rutherford is required to see Dr. Lehman on a regular basis -- every other week. Again, this course of treatment is indicative of a serious illness which is beyond question.

As Ms. Rutherford continues to remain fully disabled and unable to perform the function of any occupation due to a **physical illness** we will be turning this matter over to our attorney for further review.

Sincerely,

Daniel Keegan
65 Alta Drive
Petaluma, CA 94954

cc: Richard Johnston, Esq.                    82903pruddispute

PRUR00431

L. Sloane Polillo, M.D
Petaluma Health Center
1301 Southpoint Blvd
Petaluma. CA 94954
March 28, 2002

Peter Spencer
Regional Commissioner
Social Security Administration

Dear Mr Spencer or To Whom It May Concern,
Re: Dawn Rutherford

      I am writing on behalf of my patient, Dawn Rutherford, in order to assist in providing documentation of her disability. Ms Rutherford has been under my care since December 20, 2001 for several disabling conditions including Fibromyalgia, Epstein Barr infection, Chronic Fatigue Syndrome, Degenerative Disc Disease of the cervical and lumbosacral spine and Degenerative Joint Disease, Depression and Anxiety with panic attacks, and Insomnia.

      Ms. Rutherford is a 40 year-old woman who was previously healthy until August of 2001 when she began experiencing severe flu-like symptoms with fevers, back, neck, joint, and muscle pain, fatigue, confusion and decreased mental clarity. irritable bowel symptoms with nausea and diarrhea. and sleep disturbance with insomnia. Since that time she has been under the care of several physicians and specialists. In September 2001 Dr Michael Kurtz diagnosed her with Fibromyalgia and Degenerative Disc Disease of the cervical and lumbosacral spine and Degenerative Joint Disease, based on her disabling symptoms and X-Ray studies. In October 2001, Dr Jeffrey Mandel supported the diagnosis of Fibromyalgia and felt she also had the onset of Chronic Fatigue Syndrome. In November 2001 she was diagnosed by Dr. Finzen with Epstein Barr virus infection, having a positive antibody test. On December 4, 2001 she had a sleep study performed by Dr Jon Sassin which revealed a 74% reduced sleep efficiency with absence of Stage III and IV sleep. An electroencephalogram done at that time also revealed alpha wave intrusion. These sleep disturbances can be consistent with Fibromyalgia and can certainly lead to disabling fatigue and may also contribute to Ms Rutherford's degree of pain.

      Ms Rutherford experiences severe pain in the neck and low back. with pain radiating into both lower extremities. In addition she has severe hand and foot pain with numbness and tingling. She also notes swelling and redness in her hands and feet. Recently she has begun to experience bilateral knee pains. These problems make it very

PRUR00446