**RICHARD JOHNSTON**
Attorney at Law
131-A Stony Circle, Suite 500
Santa Rosa, California 95401
(707) 577-7422
Fax (707) 837-9532
e-mail: RichardJohnstonEsq@gmail.com

April 7, 2008

**Via Electronic Mail Transmission to TDevlin@gordonrees.com and First Class Mail**

Tad A. Devlin, Esq.
Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, California 94111

      **Re:**   *Rutherford v. Scene 7, Inc. LTD Plan et al.*
              U.S.D.C. N.D.Cal. Case no. C 07-6426 WHA

Dear Tad:

     I am writing to describe some of the discovery we intend to pursue in the referenced matter. The reasons for doing so at this early stage are (1) I believe it will assist us in addressing any discovery disputes and in communicating with the court at the case management conference; and (2) it will also advise you, your clients, and any agents or affiliates of your clients, of the scope of the subject matter we intend to pursue.

     Any potentially responsive materials should be preserved and maintained in proper form so that they are available when their production becomes appropriate. *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004); *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). Please advise immediately if your clients do not agree to this request so that we can move forthwith for an evidence preservation order. *See, e.g., Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433-434 (W.D.Pa. 2004).

     Following is a description of presently contemplated discovery; additional inquiries may arise as a result of my review of initial disclosures and accompanying documentary materials when the same are provided.

### *Documentary Materials*

     We intend to seek production of the following categories of materials.

     *1.* The complete claim file, "administrative record," or the functional equivalent thereof, to the extent not produced in connection with initial disclosures.

    *2.* All materials evidencing and/or reflecting instruments under which the Scene 7 LTD plan was or may have been operated, including without limitation the complete group disability insurance policy in question, summary plan description, and other similar documents; any amendments, modifications or additions thereto; negotiations, discussions and agreements relating to the purchase by the plan of the group disability insurance policy; and the like.

    *3.* All Prudential claim manuals and similar materials setting forth procedures, protocols, policies, and the like. *See McCurdy v. Metropolitan Life Ins. Co.,* 2007 WL 915177, at *4 (E.D.Cal.); *Beckstrand v. Electronic Arts Group Long Term Disability Insurance Plan,* 2007 WL 1599769 (E.D.Cal.); *Sterio v. Highmark Ins. Co.,* 2007 WL 1650929 (E.D.Cal.).

    *4.* Drafting histories of the materials described above in paragraphs 2 and 3. *See Montrose Chemical Corp. v. Admiral Ins. Co.,* 10 Cal.4th 645, 669-673 (1995); *Glenfed Dev. Corp. v. Superior Court,* 53 Cal.App.4th 1113, 1116 n.1 (1997).

    *5.* Materials evidencing and/or reflecting any approval by the California Department of Insurance of plan or policy language conferring any discretionary authority on any plan administrator or fiduciary. *See McCurdy, supra,* 2007 WL 915177, at *2-*3.

    *6.* Materials evidencing and/or reflecting reserves for the underlying disability insurance claim. *See McCurdy, supra,* at *3-4; *Sterio, supra,* 2007 WL 1650929, at *2.

    *7.* To the extent not produced in connection with initial disclosures, materials evidencing and/or reflecting the circumstances surrounding, reasoning behind, and alternatives considered in connection with, the claims determinations which are the subject matter of this case. *See Starr v. MGM Mirage,* 2007 WL 1560335, at *1 (D.Nev.).

    *8.* Materials evidencing and/or reflecting information about Drs. Brachman, Campbell, Gerson, Kimelman, and Kowalski, including their experience with fibromyalgia and depression and the number of patients they have treated for either or both, the number of claims they have evaluated on behalf of Prudential, all contacts and communications by any of them with Prudential, *see Beckstrand, supra,* 2007 WL 1599769, at *2; and their compensation derived from medical review activities for Prudential and the percentage of their overall income represented by that sum. *See Harper v. UNUM Life Ins. Co.,* 2007 WL 1792004, at *5 (E.D.Cal.).

    *9.* Materials evidencing and/or reflecting the contractual or other relationship between or among Scene 7, Prudential, and MLS National Medical Evaluation Services, Inc. or any other medical review contractor involved in the case, including without limitation contracts, negotiations, sales materials or other inducements, compensation, number of claims referred for review, and number of claims denied based on such reviews. *See, e.g., Powell v. Hartford Financial Services Group,* 2007 WL 773732, at *1, *3 (W.D.Ky.).

    *10.* Materials reflecting the number of claims received, paid, denied, and terminated by Prudential during the pertinent time period, both generally and for disabilities based on a

Tad A. Devlin, Esq.
Re: *Rutherford v. Scene 7 LTD Plan et al.*
April 7, 2008
Page 3

diagnosis of fibromyalgia, in order to evaluate whether Prudential has exhibited a "parsimonious claims granting history." *See Groom v. Standard Ins. Co.,* 492 F.Supp.2d 1202, 1205-1206 (C.D.Cal. 2007).

Respecting the production of documentary materials generally, whether in connection with initial disclosures or in response to discovery, we request that the materials to be preserved reflect the observations by the court in *Columbia Pictures, Inc. v. Bunnell,* 245 F.R.D. 443 (C.D.Cal. 2007):

> Second, the Notes of the Advisory Committee to the 2006 Amendments to Rule 34, which amended the Rule to make explicit that it authorized discovery of information stored electronically [footnote omitted], indicate that the definition was intended to be read expansively to include all current and future electronic storage mediums:
>
>> The wide variety of computer systems currently in use, and the rapidity of technological change, counsel against a limiting or precise definition of electronically stored information. Rule 34(a)(1) is *expansive* and includes *any type of information that is stored electronically.* A common example often sought in discovery is electronic communications, such as e-mail. The rule covers – either as documents or as electronically stored information – information "stored in any medium" to encompass future developments in computer technology. Rule 34(a)(1) is intended to be *broad enough to cover all current types of computer-based information,* and flexible enough to encompass future changes and developments.

*Id.* at 447 (emphasis in original).

Thus, the scope of materials in question includes at a minimum and without limitation electronic database information, electronically stored documents, e-mail, communications in any internal communications program or system, information in any claim file notes program or system, and audio or video recordings whether stored in analog or digital form.

We also intend to request pursuant to Rule 34(b) that any electronically stored information (ESI) be produced in the form in which it is ordinarily maintained, i.e. in its native format. According to the Advisory Committee notes to Rule 34, the materials must also be produced in a format that is not "more difficult or burdensome for the requesting party to use." A specific example in the notes is that if data is ordinarily maintained in a searchable form, it should "not be produced in a form that removes or significantly downgrades this feature." Therefore, ESI should be produced in a form which maintains any and all functions such as searching, sorting, and the like.

### *Interrogatories*

The scope of interrogatories we intend to pursue is coextensive with the subject matter discussed above in connection with documentary materials. That is, whether or not documentary materials exist which bear on that subject matter, we intend to inquire into the information itself through the use of interrogatories. We also intend to serve contention interrogatories inquiring into whether the defense intends to assert any of the various potential defense arguments discussed in *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955 (9th Cir. 2006) (*en banc.*), and specifically footnote 7 of that opinion. We will also serve interrogatories inquiring into the evidentiary bases for any affirmative defenses or denials of material allegations in the answer to the complaint.

### *Depositions*

As of now we intend to notice the depositions of some or all of the following people:

Tamika Artis; Charmaine Cadette; Andrew DeChristopher; Mary Ann DeSantos, R.N.; Rachel Evans-Sweeney; Aneesha Fain; James Furman; Gerard Gonnella; Tara Johnson; Josephine Malysz, R.N.; Jennifer Martinovich; Jennifer Nowicki; Michelle Pence; Barbara Schmidt, R.N.; Greg Schwartzkopf; and Mary Vermont . *See Toven v. Metropolitan Life Ins. Co.,* 517 F.Supp.2d 1171, 517 F.Supp.2d 1174 (C.D.Cal. 2007).

Drs. Brachman, Campbell, Gerson, Kimelman, and Kowalski. *See Toven, supra; Winz-Byone v. Metropolitan Life Ins. Co.,* 2007 WL 4276751 (C.D.Cal.); *Liu v. Standard Ins. Co.,* 457 F.Supp.2d 1030, 1038 (C.D.Cal. 2006).

I do not expect that you will readily agree that all the information discussed above is discoverable, and that is not the purpose of this letter. Rather, it is to advise you, your client, and any agents or affiliates of your client of the scope of information into which inquiry will likely be made. This will allow measures to be employed immediately to ensure the preservation of the information and material in question, pending the resolution of any discovery disputes which may arise.

Thank you.

Very truly yours,


Richard Johnston

RJ/jrj